Gaston, J.,
 

 after stating the case as above, proceeded: —Under the will of Levin Bozman, no estate passed to his executors. The inheritance descended at his death to his heirs-at-law, liable to be divested, upon a sale made by his executors. When a sale should be made as directed, the purchaser would take the estate under and by the devisor. The power was given not to persons by name, but to his executors; but the object of the power was the benefit of the heirs-at-law, and not the furtherance of any duty properly appertaining to the office of executors. It was a pure naked power uncoupled with an interest. Whatever construction of this power might be thought by us best calculated to effect the intention of the testator, the weight of authorities seems to be, that antecedently to the statute of 21st Henry 8th, c. 4, it would not have beén regarded as a power so attached to the office of executor,
 
 *391
 
 as that it might be exercised by'
 
 one only
 
 of them, if he alone accepted the office. Many .inconveniences resulted from the narrow construction which thé Courts thought themselves bound to give to such. powers $ and the preamble to the statute of 21st Henry 8,. c., 4, complains grievously of the evils thereby occasioned. It recites in language of strong reprobation, that many, persons have by their last wills and testaments willed and declared their lands to be sold by their executors, for the payment of their debts, performance of their legacies/necessary and convenient finding of their wives,, virtuous bringing up of their children, and for other charitable deeds; and notwithstanding such trust and confidence so by them put in their executors, some of them, willing to accomplish that trust, have accepted and taken upon ■ them the charge of the said testament, and have been ready to fulfil all things therein contained, and the residue Of them, uncharitably, contrary to the trust reposed in them, have refused to intermeddle in any wise with the execution.of the will, or with the sale of such lands so willed to be sold: and it further recites, that a bargain and sale of such lands, “ after the opinion of divers persons,” can in no wise be good and effectual in the law, unless the .same be made by the whole number of the executors named to and for "the same, by reason whereof the laudable purposes of such testators have been disappointed. .After setting forth these mischiefs, for remedy thereof the statute enacts, that where part of the executors named in any such testament, of any such person so making or declaring any such will of lands to be sold by his executors after his death “
 
 do refuse to take upon him or them the administration and charge of the same testament and last
 
 will,” “ then all bargains and sales of such lands so willed-to-be sold by the executors of any testator, as well heretofore made, as hereafter to be made by him or them only that so doth accept, or that heretofore hath accepted and taken upon him or them any such care or charge of administration of any such will, shall be as good and as effectual- in the law, as if .all the residue of the same executors named in the said testament, so refusing the administration of the same
 
 *392
 
 testament, had joined in the making of the bargain and sale, &c.” A proviso is annexed, that the act shall not extend to give power to an executor or executors at any time thereafter to bargain, or put to sale any lands, &c., by virtue and authority of any will or testament theretofore made, otherwise than they might do
 
 by the course of the common law,
 
 afore the making of the act.
 

 The question as to the valid execution of the power depends upon the proper exposition to be given to this statute. On the part of the lessors of the plaintiff, it is insisted, that a sale by less than the whole number of the executors is not thereby legalised, unless those not joining therein have
 
 renounced
 
 the office of executors before the ordinary. In support of this position, authorities have been cited to show, that the Spiritual Court requires such a renunciation by executors, before it will grant administration with the will annexed, because of their refusal to take the office; and it is argued, that this settled practice shows that nothing less than such a renunciation can be deemed a
 
 refusal,
 
 and that therefore the statute, when it speaks “ of' a refusal to take the administration and charge of the will,” must be understood to
 
 speak of a renunciation
 
 — of that solemn act which the Spiritual Court regards as such a refusal. There are many reasons which induce us to believe, that this position is not well founded. The ordinai'y hath no power to grant administration, except in cases of intestacy. If a man make a will, but do not name an executor, the will is not a testament, but'is confided by the ordinary to the care of an administrator by him appointed to see it faithfully executed. If in the will, executors be named, these, by virtue of the will, take the legal interest in the testator’s goods and chattels, and until this interest be released, disclaimed or abandoned, there is no intestacy. In the case of a testament, such a release, disclaimer or abandonment is indispensable, to give the ordinary jurisdiction to appoint an administrator. It is essential, therefore, to the validity of a grant of letters of administration, that they show either that the deceased died intestate, or that he has become intestate, by reason of the death or refusal of the trust, by those whom the
 
 *393
 
 deceased named to execute his will. The ordinary hath very properly established certain ' rules' of evidence by which the fact of such refusal may be made out to his .entire satisfaction. The renunciation.of.the office before him is one mode by which it can be clearly testified. It may also be done by a writing addressed to the ordinary and filed or recorded in his Court.
 

 And so it may be by failing to appear to a citation calling on'the executor or executors nominátecb-to' come forward, and accept the executorship. However'made to appear, he.adjudges that the executor or executors have refused to prove the testament. Had the statute contemplated such a renunciation as indispensable, it can scarcely be believed, that it would not have used the appropriate terms, “ refused the probate of the will before the ordinary.” But it alludes not in the slightest degree to the usages or adjudications of the Spiritual Court. It legislates upon a subject- — the devise of lands — over which that Court had no jurisdiction. It purposes to correct what it deems a mischievous doctrine of the Court’s of
 
 Common haw
 
 in relation to a matter whereof these Courts can take cognizance, and undertakes to make a new law, which is to be there observed. These Courts, in inquiring whether a power given by a devisor had or had not been validly executed, so as to pass his real estate, were not under a necessity to notice what had been done respecting the will . , ct « ■ n /-n T . , . ° in the Spiritual Court. Its probate
 
 'there
 
 in no respect affected it as a will of lands. The qualification of the executors ¿Aere was wholly unnecessary to the execution of the powers which the will gave them-, oyer .lands; and their ■renunciation of
 
 the office
 
 in no respect took away any of those powers, unless from the words of the'will, it appeared .that the powers were given to them
 
 simply as executors,
 
 The Courts of law, after, as before- the, statute, had to determine on these powers, and their valid execution, by rules distinct from, and unconnected with, the rules of the Spiritual Courts. By the common law, the execution of the. power was invalid, if all the donees of the power did not join therein. The statute introduced a modification, which rendered it unnecessary for ■ those to join, who refused to take upon themselves the administration and
 
 *394
 
 charge of the will. . When the fact of such a refusal was averred, the truth of the averment was to be ascertained by the proper triers, and through the medium of any evidence, which, by the rules of the common law, was competent to establish the fact. The inquiry was of a matter
 
 in pais.
 
 Whatever respect the Courts of law might yield to the acts of the ordinary within the sphere of his jurisdiction, they would never surrender to him the determination of a fact which affected the rights of parties litigant, before them, and on a subject of which they had exclusive jurisdiction. The probate of the will might be received as evidence thát those who so proved it had accepted the care and charge of the administration of the will of the deceased — and a renunciation before the ordinary would be evidence that they had declined the charge of administering the personal estate of their testator. But notwithstanding the probate, it might yet be, that they had refused to join in the sale of the lands and notwithstanding the renunciation, it might be, that they had intermeddled with the execution of the will. The construction contended for, would not be in accordance with that liberal spirit which should govern in the interpretation of statutes of a benignant character. The great purpose of the statute is to correct mischiefs resulting from a rigid construction of these testamentary authorities, and it is the rule of law, so to expound the act, as to suppress these mischiefs, and apply its remedies. If it'were in the power of one or more of the executors, by forbearing to renounce before the ordinary, still to hang back, decline acting, and practically refuse the execution of the trust, and those willing to perform it were yet powerless, notwithstanding the statute, but little would have been accomplished for insuring the execution of the testator’s purposes. No adjudication has been cited in support of this position, nor is it upheld by the authority of any respectable elementary writer. In the case of
 
 Bonafault
 
 v.
 
 Greenfield,
 
 1 Lev. 60; Cro. Eliz. 80, one of the executors had refused to take out administration, or to inter-meddle with the estate, or to join in the sale, but had not renounced before the ordinary, or disclaimed by deed. The
 
 *395
 
 Court thought that a sale by the other executors was good, at common law, because it satisfied the words of the will, but they held, that however that might be,
 
 the statute made it ‘clear.
 
 This case is quoted, as of Undoubted authority, by Mr. Justice Holroyd, in
 
 Townson v. Tickell,
 
 3 Bar. & Ald. 31; 5 Eng. Com. Law Rep. 219, and reasoning by analogy, he
 
 infers
 
 from it, that where an estate is devised to two beneficially, and by name, one may refuse the estate by matter
 
 in pais
 
 without a disclaimer, either by deed, or of record. The text writers lay down the rule in
 
 broad
 
 terms, that where some refuse to act, the executors accepting the trust may sell. Co. Lit. 113, a. 6 Cruise's Dig. 456; 4 Kent’s Com. 320 ; Perkins, page 238, sec. 545, is still more pointed. “If a man maketh .his will, and maketh two executors, and willeth that his executors shall sell his land, &c., and dieth, and one of them
 
 will not intermeddle,
 
 and the other - taketh administration upon him, and payeth the debts, áre., the sale made by him alone, is good.” In Virginia (see
 
 Eddy
 
 &
 
 Knox
 
 v.
 
 Butler,
 
 3 Mum. 345, and
 
 Nelson
 
 v.
 
 Carrington,
 
 4 Mum. 332) it has been decided, that a conveyance by part of the executors named in the will, is justified by the statute of 21 Henry 8th, where the others refused to take upon themselves the charge or administration thereof, and that such refusal may be found, either from declarations
 
 in pais,
 
 or may be presumed, as in other cases. But what- . ever may be the law elsewhere, with us it is settled. Here, the question cannot be considered as an open question. In
 
 Den
 
 ex dem. Marr v. Peay, 2Murph. 84, the Supreme Court of this state, under its former organization, declared the law to be, that a renunciation in the Court of Probate furnished evidence of the refusal mentioned in the statute; but was not indispensable evidence. In the subsequent case of
 
 Debow
 
 v.
 
 Hodge,
 
 1 Car. Law Reps. 368, the same doctrine is very plainly recognized.' This exposition had been long before given by a learned Judge on the Circuit, as will be seen in
 
 Miller
 
 v.
 
 White,
 
 Taylor’s Rep. 309. It is here, then, a fixed rule of property, that- where a power is given to executors to sell lands, it is sufficient that the acting executor or executors living at the time, make the sale.
 

 
 *396
 
 It is further objected, by the lessors of the plaintiff, that if a formal renunciation before the Court of Probate be not necessary, yet, that in this case there was notevidence ofsuch a refusal by the other executors, as justified the sale made by him who alone proved the will. It is admitted, that Judith Bozman’s refusal of the office sufficiently appears. It is alleged, however, that Currell had' only forborne to execute the office, and omitted to join in the sale, but had not
 
 refused
 
 the one or the other. This objection also appears to us not tenable. When a man confides to another the management of his estate after his decease, the nature of the office calls for prompt action. The duties arise immediately upon the death of the testator; and a forbearance to enter upon the execution of them when the will is proved, is preemptive evidence of a refusal to accept the charge of his testament. A renunciation of record is clearly evidence of such refusal; yet if Currell had in this case actually so renounced, it is not to be questioned, but he
 
 might
 
 have come forward the next day, and taken the oath of office, and entered upon the execution of its functions. Such a renunciation then would have amounted to no more than a declining at that time to act as executor. So long, therefore, as he declines, he refuses. Now our laws prescribe the only
 
 regular
 
 way in which the acceptance of the office can be testified. No person, says the act of 1715,
 
 {Rev. ch.
 
 10, sec. 4,) shall presume, under a penalty therein expressed, to enter upon the administration of a deceased person’s estate, without letters testamentary; and the secretary shall not issue such letters, until the executor shall have sworn to execute the will of the deceased. His interference, without taking out letters, or swearing to execute the will, would unquestionably subject him to the responsibilities of an executor, and might, perhaps, notwithstanding the impropriety of such conduct, constitute him a full executor. But, at all events, such an interference is not to be presumed. The forbearing to qualify is therefore
 
 prima facie
 
 evidence of refusal. But if he neither qualify nor act — if he intermeddle not with the estate of the deceased either regularly or irregularly, — then the evidence of refusal is full. The care and administration of the testament have been tendered to him by the testator and he has declined the acceptance of the trust.
 

 
 *397
 
 If the office has been refused by him, it "is not necessary that it should
 
 appear,
 
 that he has
 
 also
 
 refused to join in the sale. This case was expressly settled in the case of
 
 Marr
 
 v.
 
 Peay,
 
 before referred to.
 

 The Court is of opinion, that there is no error in the judgment below, and that it should be affirmed with costs.
 

 Per Curiam. Judgment affirmed.