Gaston, J.
 

 There are three counts in the declaration of the plaintiffs. In the first, the plaintiffs charge that the defendant was possessed of two negro slaves of an estate during the life of Joanna Sergener, the remainder of the estate in said slaves belonging to the plaintiffs; and that the defendant, while so possessed, with intent to injure, prejudice and aggrieve the plaintiffs in their said interest in remainder, removed the slaves beyond the State to parts unknown to the plaintiffs, and absolutely sold and converted them to his own use, whereby the said plaintiffs,after the death of the said Joanna, have been utterly unable to find the said slaves, and have wholly lost the benefit of their interest in remainder therein. The second count charges that the defendant was in possession of two slaves of an estate for the life of Joanna Sergener, the remainder of the estate in said slaves belonging to
 
 *542
 
 the plaintiffs and the defendant, as tenants in common, and that the defendant, while so possessed, with intent to injure and aggrieve the plaintiffs in such their interest in remain¿ei.; removed the slaves to parts unknown, and absolutely-sold and converted them to his own use, whereby the plaintiffs have been unable, upon the death of the said Joanna, to find the said slaves, or to receive & enjoy their undivided shares in the said slaves and their labor, and have wholly lost the benefit of such their interest in the remainder therein. The third count is in trover, wherein the plaintiffs allege that they were possessed of two slaves, that they casually lost the same, that the same came to the defendant by finding, and that he wrongfully converted them to his own use. Upon the general issue, the plaintiff shewed that
 
 Thomas Fo shall ,
 
 by his last will, bequeathed a negro woman, Fan, and her increase to his daughter Joanna Sergener for life, and after her death to be equally divided between all her children; that Foxhall died in 1792, and, after his death, John Sergener, the husband of the legatee Joanna, took possession of Fan under the bequest; that John Sergener and his wife Joanna had a son, James Sergener, and several other ’ children; that in November, 1803, John and James Sergener, for a valuable consideration, sold and conveyed Fan to Robinson, the original defendant; that after the said sale Fan had issue, the negroes Tamar and Daphne, -mentioned in the declaration; that in 1829, Robinson sold Tamar and Daphne to a negro trader, who immediately removed them out of the State and to parts unknown; that in 1831, Joanna Sergener died; that shortly thereafter one of the plaintiffs in this action demanded the negroes Tamar and Daphne of Robinson, who refused to deliver them; and, on the 21st of March, 1832, this writ was sued out by the plaintiffs, who ate all the children of the said Joanna, except James Sergener. Robinson died after the cause was put to issue, and the action was revived against -his executor. Upon the case thus made, the defendant contended, 1st, that John Sergener had an absolute estate in Fan, as the husband of Joanna; 2dly, that the remainder to the children of the said Joanna >vas void; 3dly, that as Robinson purchased the negro Fan
 
 *543
 
 of James Sergener, he thereby became a tenant in common with the plaintiffs, and therefore the plaintiffs could not sustain an action of trover; and lastly, that as the sale by Rob. inson was in the lifetime of Joanna Sergener, there Was no conversion of the negroes after the possessory right of thé plaintiff accrued. The court instructed the jury, that the plaintiffs, under the will of Thomas Foxhall, had an estate in remainder, after the- life estate of Joanna Sergener, in common with Robinson, who had acquired the share of James Sergener; that, as tenants in common with him, they might maintain an action against him, if there had been a destruction, of the common property; that if Robinson sold and delivered the negroes to the negro trader, for the purpose of having them conveyed to parts unknown to the plaintiffs, and they were so removed, this was in law, as respected the plaintiffs, tantamount to a destruction of the property; and that, although the sale made by Robinson, was before the plaintiffs had a right to the possession of the slaves, yet, made for the purpose of preventing them from obtaining such possession at the death of Joanna Sergener, it was conversion, which would sustain this action. The plaintiffs had a general verdict and judgment, and the defendant appealed.
 

 We have no doubt of the correctness of the construction put by his Honor on the bequest in Mr. FoxhalPs will. By will, and now by deed in cases of slaves, the law allows of a limitation to one for life, with a contingent remainder over to others at his death. The word “ children” is an appropriate term to describe a class of persons bearing that relation^ and by that term they may take as designated individuals* It is not a word of limitation, but simply of description or purchase. There may, indeed, be sufficient indications from the context of a will or other instrument, that the word i! children” has been inaccurately used in it, and that thereby heirs or heirs of the body were intended. If there be, then the construction is to be put upon the mistaken term, which, it is thus shewn, it was designed to bear; and the instrument will have the same operation, as if the correct ex
 
 *544
 
 pression had been used. But nothing is here shewn to evince, that the testator, by the word “children,” did not mean children in the ordinary and natural sense of the word; and there is", therefore, nothing to warrant the court in assigning to it any other sense.
 

 Since the trial of this cause in the court below, we have had occasion to consider and decide one of the points made in it. In
 
 Lewis
 
 v.
 
 Mobley,
 
 4 Dev. & Bat. 233, this court held,that where the tenant for the life of another sold a slave, pending the life estate, the ultimate proprietor eould'not, be. cause of that disposition, maintain trover; because, at the time of the alleged conversion, he bad not in him a present right to the possession. We are bound, therefore, to hold, that there was error in this part of his Honor’s instructions.
 

 It has been pressed upon us with much zeal and ability, that the jury ought to have been instructed that the plaintiffs could not maintain any count in the declaration — not the third, because of the reason just assigned — not the first, because the evidence did not correspond with the allegalion therein, that the plaintiff had the entire interest therein — and not the second, because the absolute sale of a slave, under any circumstances, by a tenant for life, is not such an injury to one in remainder as to be the foundation of a legal action. If we had been convinced by this argument, we should not have hesitated so to declare, although not necessary for the decision of the ease before us, in order to save the parties from incurring further expense in this action. But we are not so convinced. Nothwithstanding many difficulties attending the form of such an action — as, for instance, when does the right of action accrue, and what is the proper measure of such an injury — we believe, that, as the remainder in slaves is. a
 
 legal
 
 interest, there must be a
 
 legal
 
 remedy for a wrong purposely done to it.
 

 Because of the error already noticed in the Judge’s charge, there must be a new trial. It is apparent upon the case, that the trial was bad
 
 upon the count in trover.
 
 The points made, and the instructions given, were all in relation
 
 to that count,
 
 and
 
 non constat
 
 what would have been the verdict
 
 *545
 
 of the jury, had their attention been confined to the second count.
 

 Per Curiam, Judgment reversed and new trial awa'rded.