LUCY W. RYDER ET ALS. V. ELLA B. OATES ET ALS.

(Filed 23 May, 1917.)

1. **Partition—Unknown Claimants—Contingent Interests—Clerks of Court—Jurisdiction.**

   When adversary proceedings to partition land among tenants in common, alleging fee-simple title in some of the parties and joining others for the purpose of excluding such interest, contingent or otherwise, as they may claim, whether *in esse* or otherwise (Rev., sec. 410), and for the appointment of guardians for such interest, are brought before the clerk of the Superior Court, the Superior Court, on appeal, acquires jurisdiction and can retain the cause and hear and determine all matters in controversy. Revisal, sec. 614.

2. **Courts—Jurisdiction—Appeal—Contingent Interests—Sale—Statutes.**

   Lands subject to contingent limitations may be sold by order of the judge of the Superior Court in term, on appeal in proceedings in partition improperly brought before the clerk, by retaining jurisdiction for the purpose of settling the controversy. Revisal, secs. 1590, 614.

3. **Parties—Class Representation—Service—Publication—Judgments.**

   Where parties are brought in by publication in proceedings to partition lands, for the purpose of excluding any interest they might claim, and are properly represented by those in the same class, the doctrine of "virtual representation" applies.

4. **Judicial Sales—Courts—Private Sales.**

   It is within the power of the court, having jurisdiction, to order the private sale of lands for the purpose of dividing the proceeds among tenants in common.

5. **Estates—Contingent Limitations—Vested Title.**

   A deed in trust to lands that the title vest absolutely in the children surviving the wife, and that the trustee shall do whatever is necessary to vest it accordingly, gives the surviving children an absolute and indefeasible title upon the happening of the event, which is not destroyed by a further limitation to the brothers and sisters of the donor should all of such children die without issue.

6. **Trusts and Trustees—Executors and Administrators—Power of Disposition—Consent of Executors—Renouncement—Judgment—Estoppel.**

   A devise and bequest of real and personal property to the wife with the power of disposition given her with the consent of several executors named in the will, is one of personal confidence in each of the executors, requiring the consent of all for the exercise of the power; and where the executors have not qualified by reason of death or renunciation under the formalities of Revisal, sec. 10, those thus renouncing may not come in and qualify after a lapse of twenty years and give valid consent to the exercise of the power, especially when they are bound by a judgment in an action to sell the lands, wherein they had been made parties.

APPEAL by defendants from *Cline, J.*, at April Term, 1916, of MECK-LENBURG.

This is a special proceeding for sale for partition of the "Central Hotel" property on Independence Square in Charlotte. The *feme* petitioners are the sole surviving children of M. L. Wriston, deceased (their husbands being joined).

The proceeding was begun before the clerk, the *feme* petitioners alleging that they are the owners of an indefeasible fee-simple title to an undivided one-half interest in said property, and that the devisees of R. M. Oates, who are defendants, are the owners of an indefeasible fee-simple interest in the other undivided one-half interest. The petitioners also joined as defendants their children and grandchildren, the descendants of brothers and sister of M. L. Wriston, and J. C. Springs to represent the heirs of H. G. Springs as a class, on the ground that said defendants might by some possibility claim an interest in said property, a part of the relief sought being the exclusion of such interest.

The devisees of R. M. Oates filed an answer admitting all the allegations of the petition and joining in the prayer for relief.

All of the children of the petitioners who are of age filed an answer admitting the allegations of the petitioners, joining in the prayer for relief, and disclaiming any interest in said property in favor of said petitioners. Four of the defendants are infant children and grandchildren of the petitioners for whom C. S. Glasgow was appointed guardian *ad litem*. Adverstisement was made for all parties claiming any interest who were unknown to the petitioners. None came in, but the clerk appointed A. G. Robertson guardian *ad litem* for any unknown parties. These two guardians *ad litem* filed motions to dismiss and demurrers, which being overruled, they appealed to the judge. The appeal came on at term-time, and the judge sustained the action of the clerk, but at request of the petitioners he retained the cause in that court under Revisal 614, and appointed Hunter Marshall, Jr., guardian *ad litem* of all persons not *in esse* to whom by any possibility any claim to an interest in the property might accrue. He also filed certain motions and demurrers which were overruled. All the guardians *ad litem* thereupon answered the petition, admitting the allegations of fact in the complaint but denying that the *feme* petitioners were the owners of an absolute title to an undivided one-half interest in said property, and asked that the property be sold and that proceeds be invested in accordance with Revisal, 1590.

It appears that an offer of $361,041.50 had been made for an indefeasible fee-simple title in the property by W. S. Alexander, who had assigned his bid to the Southern Real Estate Loan and Trust Company, which duly filed the bid in writing. Upon proof the court found as a

conclusion of fact and of law that an actual partition of the lands could not be made without injury to all the parties interested; that the price bid was full and fair; that the terms and conditions of the bid were reasonable and just; that the interest of all parties would be served by the sale and the acceptance of the bid at that price, and appointed a commissioner to execute the deed to the purchaser; but the bidder refused to accept the deed when tendered. A rule being served upon the bidder to show cause, it filed an answer alleging that the commissioner could not convey an indefeasible fee-simple title. The petitioners demurred to this answer. The court sustained the demurrer and rendered judgment against the bidder for specific performance, and the bidder appealed.

The court also directed that the commissioner should collect the purchase money and after paying the costs should distribute the remainder among the *feme* petitioners and devisees of R. M. Oates. From this order the guardians *ad litem* excepted and appealed.

*C. W. Tillett, Jr., for petitioners.*
*Cansler & Cansler for Ella B. Oates et als.*
*Glasgow & Glasgow for Bessie Durham et als.*
*Pharr & Bell for Trust Company, appellant.*
*A. G. Robertson, for unknown defendants.*
*Hunter Marshall, Jr., for defendants not in esse.*

CLARK, C. J. The appeal presents three questions: (1) Was the procedure regular and proper? (2) Are the *feme* petitioners the absolute owners of the Wriston interest? (3) Are the devisees of R. M. Oates the absolute owners of the Oates interest?

M. L. Wriston, father of the *feme* petitioners, was the owner of an undivided one-half interest in this property in fee, and R. M. Oates owned the other one-half interest in fee in said lots.

In 1876 M. L. Wriston died leaving a last will and testament, which appears in the record. He left surviving him his widow, five daughters who are the *feme* petitioners, and a son, Henry Wriston. All his other children had predeceased him, unmarried and without issue. The son, Henry Wriston, died in 1893, intestate, unmarried and without issue. In 1913 the widow of M. L. Wriston died intestate. The *feme* petitioners, Lucy W. Ryder, Bessie W. Durham, Ada W. Brockenbrough, Ella W. Lee, and Minnie W. Smith, are the daughters of M. L. Wriston, and his sole heirs at law and devisees, and they claim as joint owners in fee an undivided one-half interest in the Central Hotel building and lot in Charlotte, which it is sought to have sold for partition. The first three named have children and grandchildren, who are parties defendant and

represented in this action. The other two petitioners, Ella W. Lee and Minnie W. Smith, have never had any children and the last named is a widow. All the brothers and sisters of M. L. Wriston are dead and all their descendants known to the petitioners have been named as parties defendant and those not known have been advertised for as provided in Revisal, 2490. H. G. Springs died in 1903, leaving a will wherein the defendant J. C. Springs was named as executor. H. G. Springs left a large number of heirs, many of whom are not known to the petitioners. Under the provisions of Revisal, 411, the petitioners have joined the said J. C. Springs, who is an heir of H. G. Springs, to represent the heirs of H. G. Springs as a class.

R. M. Oates died in 1897, owning an undivided one-half interest in fee in the Central Hotel property, leaving surviving him his widow, Ella B. Oates, and the following children: Lalla O. Bethel, Lucy Oates, Bertha O. Twitty, and John B. Oates. In his will R. M. Oates named his wife and three nephews as executors of his estate, and gave them certain powers over the estate. One of the nephews predeceased him. The other two renounced their right to qualify, and one of them has since died. The surviving nephew is a party to this proceeding, but has not filed any answer nor made any objection to the sale or order of disbursement. The executrix has never undertaken to exercise any of the powers conferred upon her by the will except to distribute the income from the estate among her children. She and all of her children are parties to this proceeding and have joined in the prayer for sale.

The procedure in this matter has been regular and proper. As the petitioners contend that they are the absolute owners of the Wriston interest in the land set out in the petition, and that the devisees of R. M. Oates are the absolute owners of his interest in said land, and that the *feme* petitioners and said devisees are tenants in common of said land, they are entitled to have sale of the same for partition, the court having found that actual partition of the land is impracticable. The proceeding was therefore properly begun before the clerk. In order to settle all doubt as to the title of the property the petitioners have joined as defendants all persons who might in any contingency claim an interest in said land, known and unknown, *sui juris* and *non sui juris,* including also any not *in esse* who might by possibility hereafter set up a claim, Revisal, 410. The clerk having overruled the motions and demurrers filed by the guardians *ad litem* of all persons represented by them who claim a contingent interest, the guardians appealed to the judge, who affirmed the judgment of the clerk and, retaining the cause, as under Revisal, 614, he was authorized to do, he proceeded to hear and determine all matters in controversy. This

RYDER *v.* OATES.

course has been repeatedly recognized as correct. *Little v. Duncan,* 149 N. C., 84. By virtue of Revisal, 1590, land subject to contingent limitations can be sold by order of the judge at term-time. Even if the proceeding had been improperly brought before the clerk, the judge had ample authority to retain jurisdiction and order the sale. Revisal, 614 and 1590; *Springs v. Scott,* 132 N. C., 548; *Smith v. Gudger,* 133 N. C., 627. Even if the proceeding before the clerk had been without authority, the judge could retain jurisdiction after the action was brought before him. *In re Anderson,* 132 N. C., 243.

Even though the parties who were brought in by publication should show that they have not been properly served, the sale under Revisal, 1590, is valid when the class of remaindermen coming next after life tenants is represented by one or more persons in being, under the doctrine of "virtual representation." *Springs v. Scott,* 132 N. C., 548. In *Hodges v. Lipscombe,* 133 N. C., 199; the court held that it would be a vain and useless thing for the law to require every conceivable individual to be summoned.

All the children and descendants of the brothers and sisters of M. L. Wriston have been summoned by publication, but several of them have been personally served, and these sufficiently represent the class.

It was entirely in the power of the court to order a private sale. *McAfee v. Greene,* 143 N. C., 411, which holds that this has been too frequently judged to be now an open question. *Wooten v. Cunningham,* 171 N. C., 13. In *Overman v. Tate,* 114 N. C., 571, the procedure was very much on all-fours with this, and there the sale was ordered by the clerk, though one of the interests was subject to contingent limitations.

The court properly held that the *feme* petitioners were the absolute owners of the ·Wriston interest and entitled to the proceeds of the sale. The guardians *ad litem* have appealed upon the ground that the proceeds should be invested, but an examination shows that the deed of settlement set out in the record, executed by M. L. Wriston, conveyed an absolute title to the *feme* petitioners which became vested at the death of his widow in 1913. It provides that at her death "The property shall *vest absolutely* in the children surviving her," and at the end of the deed of settlement it is provided that upon the condition named upon which the deed shall "vest and pass absolutely," the trustees shall do whatever is necessary to "perfect the title" in the parties entitled to the estate at that time.

The effect of these words is not destroyed by the provision in the deed of settlement: "In the event of all of his children dying without issue, then said property shall descend to the brothers and sisters of said M. L. Wriston and the heirs of those who may die leaving issue." He did not mean this as a condition of defeasance, but referred to "death

without issue during the life of his wife." He made the above provision to limit the estate to his brothers and sisters should his lineal descendants become extinct before the death of his wife, for the deed is clear that at his wife's death, whether his own children or their issue or his brothers and sisters would take, they should take not conditionally and defeasibly, but "absolutely."

In said deed of settlement of M. L. Wriston did not reserve power to reappoint the property unless he outlived his wife. Otherwise, the reservation would be void for repugnancy. Besides, his will is not an exercise of the power to reappoint, but he followed closely in his will the terms of the deed of settlement. Item 4 of the will devises "All my estate, real and personal." In *Carraway v. Moseley,* 152 N. C., 351, it was held that a will, in order to be an exercise of a power, must contain either some reference to the power or to the property which is the subject of the power, or it will be ineffectual unless construed to be au execution of the power. In this will there is no reference to the power, nor any distinct references to the Central Hotel property, and the will is effectual without construing it to be an exercise of the power, because the testator at his death owned a large amount of property besides the Central Hotel property. Revisal, 3143, does not apply, because that refers only to general powers, and the power here reserved is special. It is the power to appoint to other "uses and trusts," while the will does not undertake to declare any uses and trusts at all, but disposes simply of the fee. It does not purport in terms, or by reasonable construction, to be an execution of the power by will.

In the deed of settlement Wriston expresses his intention in making the deed of settlement to be: "The wish and purpose of said Wriston is to settle a portion of his estate on his wife and children so as to secure a home and support for his family against the contingencies of future debt and embarrassments, retaining ample property to meet all his present liabilities."

In accordance with this expressed wish, he gave his wife the property for her life, not directly, because prior to the Constitution of 1868 this would have made it liable to the payment of his debts. He therefore placed the property in the hands of a trustee, with the provision that her estate therein should continue during the joint lives of himself and wife, and should she survive him, that this estate would terminate at her death or second marriage, when it would "vest absolutely" in the parties then in remainder, who are these petitioners. He directed that on his wife's death or second marriage "the property is to vest absolutely," and further on he refers to the death or second marriage of his wife as the condition upon which the estate shall "vest and pass absolutely." The word "vest absolute" or "absolutely" means an indefeas-

ible, unconditional, fee-simple title. *Bank v. Johnson,* 168 N. C., 308; *Dunn v. Hines,* 164 N. C., 113; *Vinson v. Wise,* 159 N. C., 653; *Whitfield v. Garris,* 134 N. C., 25; *Galloway v. Carter,* 100 N. C., 121; Price *v. Johnson,* 90 N. C., 597; *McEachin v. McRae,* 50 N. C., 22; Hilliard *v. Kearney,* 45 N. C., 223; *Cox v. Hogg,* 17 N. C., 128, in all of which the phrase "absolute property" is held to mean indefeasible.

The termination of the trust estate is the time to which the death without issue will be referred. Here the trust estate terminated at the death of Mrs. Wriston. The language of the trust itself is, "These trusts to continue during coverture, and should she survive her said husband, then during her natural life or widowhood"; and it is provided that upon such death or second marriage the trustee should "convey to the parties entitled, should the same be necessary to perfect title, without the trouble and expense of applying to the court." The deed of settlement further recognizes this by providing for the removal of the trustee, and also for the change of the investment by the written consent "of the trustee and the said M. L. Wriston and wife, or the survivor of them." No power is given to change the trustee or investment except during the life of the said M. L. Wriston and his wife or the survivor of them. His object in making the trust was to protect his wife and children from his subsequent debts, and to prevent his wife's interest in the land being subject to sale for his debts, as the law then stood, the trust was created and a trustee appointed.

The rule laid down in *Hilliard v. Kearney,* 45 N. C., 221, and which has been adhered to ever since without modification is: "Where there is an intermediate period between the death of the testator and the death of the devisee, such as the expiration of the life estate or the arrival of a beneficiary at a certain age, the death without issue will be referred to this intermediate period." The courts do not refer "the death without issue" to the death of the testator, because the testator could provide by codicil for any change that might occur after making his will and prior to its probate.

The deed of settlement is expressed therein to be for the benefit of his wife and of his children who were then in being and such as might be born thereafter. The contention that the limitation over would not vest on the death of his wife, but only upon the death of all his children without leaving issue would be void, moreover, because it would be in violation of the rule against perpetuities, which is as follows: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Gray on Perpetuities, sec. 201. Two of the *feme* petitioners, Lucy W. Ryder and Ella W. Lee, were born after the execution of the deed of settlement, on 12 March, 1867. Any estate created by the deed the vesting of

which could by any possibility be postponed for a longer time than twenty-one years after the death of Mrs. Wriston and the three petitioners who were then living would be void. The limitations over, if as contended for by the appellants, would be void for remoteness and the estate of the *feme* petitioners becomes absolute. *Porter v. Rose,* 55 N. C., 196; *Weatherly v. Armfield,* 30 N. C., 25; Gray on Perpetuities, sec. 247.

By the terms of the deed of settlement M. L. Wriston did not reserve the power to reappoint the property unless he should outlive his wife, for the second division of the deed specifies: "Should he survive his said wife." The will, besides, does not constitute an execution of the alleged power, for the reasons already stated.

Robert M. Oates by his will gave his wife, with the consent of her coexecutors (none of whom qualified), the right to sell both real and personal property, and directed that on the death of his wife, her coexecutors should divide the estate equally between his children, and if they "deemed best" they were given power to allot to his daughters a life estate in their shares, with limitations over to their children. As already stated, only the widow qualified as executor; one of the coexecutors named died before the testator and one since, and the other, who renounced, is a party to this action and makes no exception to the decree of sale and distribution.

As to the objection that the surviving coexecutor could hereafter come into court and, withdrawing his renunciation, qualify as coexecutor and exercise the power to limit the property to the daughters of the testator for life, it is to be observed that such power was conferred upon the coexecutors as a trust personal in them and to be exercised at their discretion. It cannot, therefore, be exercised by one of the coexecutors after the death of the other two. In Tiffany on Real Property, sec. 282, the principle of law is thus stated: "A statute sometimes provides that a surviving executor or trustee may exercise the powers originally given to the executors or trustees jointly; but even then the power will not, it seems, be exercisable after the death of one, if it was intended to rest in the joint personal discretion of the persons named as executors or trustees, or if it was given to them in their individual rather than their official character."

In Perry on Trusts (6 Ed.), sec. 497, it is said: "A discretionary power to four trustees and the survivors of them cannot be executed by the last survivor, for though the power may generally be held to survive, an intention to the contrary, if it can be fairly inferred, will control."

In the same work, section 273, it is said: "But if the power is given the person and not to the office, a disclaimer by one would not vest the power in the other trustees so as to enable them to exercise it." In

*Dillard v. Dillard,* 97 Va., 441, where the will conferred a power on the testator's two sons and her son-in-law, the Court said: "The power, as respects John T. Dillard, being conferred on the three trustees by name, without words of survivorship, and being one of personal confidence, it could only be conjointly exercised by all three of them and not by a less number. The authority, being joint, is determined by the death of one of them. Hill on Trusts, marg. pp. 211, 227, 488; 2 Perry Trusts, secs. 496, 497, 499; *Cole v. Wade,* 16 Ves., 27; *Walter v. Maunder,* 19 Ves., 424; and *Brown v. Hobson,* 3 A. K. Marsh, 380. If the law were otherwise, then upon the death of one of the trustees, the two survivors could execute the power, and upon the death of one of them the sole survivor could do so, and might dispose of the property contrary to what the other two trustees in their lifetime always opposed and prevented, and thereby frustrate the very object of the testator in intrusting its disposition to the joint judgment of all three of them, and defeat his testamentary intent."

In *O'Brien v. Battle,* 98 Ga., 766, the Court said: "Where a will confers upon two trustees a power not coupled with an interest, and no words of survivorship are used in the instrument, the presumption of law is that the grantor contemplated a joint execution of the power, and the survivor cannot execute it, quoting *Mansel v. Mansel* (Wilm. Op., 36), where *Wilmot, Lord Commissioner,* said: 'If I say I will trust two, the law will not say I shall trust one; it is a joint confidence. But if it is limited to the survivor it is saying I will trust two as long as they live, and afterwards one of them.' So, if the power be given to particular persons by name, without saying more, or adding words of survivorship, it must be exercised jointly, and upon the death of one of them the power will be gone." 1 Perry Trusts, sec. 294. To same effect, *In re Wilkins,* 86 N. Y., 360.

*Woods v. Sparks,* 18 N. C., 390, and *Davis v. Inscoe,* 84 N. C., 396, quoted by the appellants as authority that the power here survives to the surviving trustee, James M. Oates, is not in point, for they applied only to the power of sale, which is not a personal confidence such as is reposed by the testator in this case in the judgment of his three nephews. The Court cannot hold that he trusted to one when the will intrusted it to the judgment of three.

Our statute for the construction of statutes, Revisal, 2831 (2), which provides that a statute giving "joint authority to three or more public officers or other persons shall be construed as giving such authority to a majority of them," unless otherwise expressly declared in the statute, recognizes the general rule as above stated, and excepts from it the authority when given by a statute, which is not personal in its nature.

A somewhat similar incident is related in 2 Campbell's Lives of Lord

Chancellors, 330, as having made the fortune of *Lord Chancellor Ellsmere* when he was simply a young lawyer, Thomas Egerton. Three graziers had deposited a sum of money with an innkeeper to be returned on their joint application. One of them, fraudulently pretending he had authority to receive it, induced the innkeeper to return the money to him, and he absconded with it. The other two brought action for the money, but young Egerton said: "This money was to be returned to three, but *two* only sue. Where is the *third?* Let him appear with the others; till then the money cannot be demanded."

Revisal, sec. 10, provides: "Any person appointed an executor may renounce the office by a writing signed by him, and on the same being acknowledged or proved to the satisfaction of the clerk of the Superior Court, it shall be filed." There are decisions, it is true, that an executor who has renounced can under some circumstances come in and qualify, *Davis v. Inscoe,* 84 N. C., 401; *Wood v. Sparks,* 18 N. C., 389. But there is no case in which he renounced with the formalities of this statute, and afterwards has qualified. Certainly he should not be allowed to do so after the lapse of twenty years, as in this case.

Moreover, James M. Oates being a party to this action, and filing no answer and not appealing from the decree of the court, is bound by the judgment herein rendered.

After most careful consideration of the very able briefs filed respectively by the appellants and the appellees, we are of opinion that a good and indefeasible title can be conveyed to the purchaser and that the decree of the court below should in all respects be

Affirmed.