DEVIN, J., dissenting.
CLARKSON and SEAWELL, JJ., concur in dissent.
Petition for partition.
Petitioners, as the last surviving children, and the grandchildren of Annie L. Owens, deceased, under and by virtue of her last will and testament, claim title to certain land situated in Washington County, North Carolina, adjoining the town of Plymouth, and lying on both sides of the public road leading from said town to Mackey's Ferry.
Respondents also claim title to said land, and plead sole seizin thereof, under and by virtue of mesne conveyances from L. L. Owens and wife, Mary Owens, to whom H. S. Ward, Commissioner, executed a deed purporting to convey same pursuant to an order entered in January, 1910, in a proceeding in the Superior Court of said county to which the children named in the will of Annie L. Owens, all of whom survived her, and her grandchildren then in being were named as parties. As against them the present petitioners, some of whom were not then born, attack the sufficiency of that proceeding to pass title to L. L. Owens and wife, Mary Owens.
Respondents further assert that they, and their predecessors in title, have been in open, notorious, continuous and adverse possession of the lands claimed by them, respectively, under known and visible boundaries and under color of title for more than twenty years, and plead the seven and twenty years statutes of limitations, C. S., 428 and 430, in bar of petitioners' right to recover in this action, and also plead the three-year statute of limitation. C. S., 407.
When the case came on for trial the parties waived jury trial and agreed that the court might find the facts and, upon the facts found, enter judgment. Pursuant thereto the parties submitted an agreed statement of facts and evidence substantially as follows:
I. Annie L. Owens died on 31 December, 1909, seized and possessed in fee simple of the lands in controversy, and leaving a last will and *Page 841 
testament, pertinent portions of which are these:
"1st. I give and bequeath to my beloved husband, Benjamin F. Owens, all my real . . . property . . . I may be possessed of at the time of my death, to hold during the said Benjamin F. Owens' life, then . . . to be equally divided between my children as follows:
"2nd. Henry S. Owens, Claudia Owens Read, Louis L. Owens, Clyde W. Owens, Lucille Owens Murphy, Annie B. Owens Dupree, Mabel Owens and then to their children.
"3rd. Henry S. Owens is to have equal share with the others less $150.00 for lot given him during my life.
"4th. Claudia Owens Read is to have equal share with the others less $290.00 for lot given her during my life.
"6th. I want my named children to be their own executors in dividing the property, and if either of my named children should die without an heir, their part is to come back to their surviving brothers and sisters."
On the date when the will was signed, 17 April, 1902, three of the children of the testatrix, to wit: L. L. Owens, Clyde W. Owens and Mabel Owens, had no children. However, the testatrix was survived by her husband, Benjamin F. Owens, who died 30 October, 1912, and by all the children named in her said will, each of whom then had one or more children in being.
II. After the probate of the will of Annie L. Owens and in January, 1910, an action or proceeding was instituted in the Superior Court of Washington County entitled: "H. S. Owens, Claudia Read and her husband, J. W. Read, L. L. Owens, C. W. Owens, Lucille Murphy, and her husband, C. L. Murphy, Annie B. Dupree and her husband, A. R. Dupree, Mabel Leggett and her husband, C. R. Leggett, Effie B. Owens, minor, John L. Owens, minor, Doris Evelyn Owens, minor, Lou C. Read, minor; Jack W. Read, minor, Brook F. Read, minor; Dave Taylor Read, minor; Marion V. Owens, minor; Clyde Latham Owens, minor; Mary Jarvis Murphy, minor; B. F. Owens Dupree, minor; Allen Dupree, minor; Elizabeth Dupree, minor; Raymond Leggett, minor, and C. W. Owens, executor of Annie L. Owens, deceased."
The petitioners in this proceeding, H. S. Owens, Claudia Read, L. L. Owens, C. W. Owens, Lucille Murphy, Annie B. Dupree and Mabel Leggett, are the children of Annie L. Owens named in her said will. Of the other petitioners therein, all of whom were then minors, Effie B. Owens, now Effie O. Perry, and John L. Owens are the children of Henry S. Owens; Doris Evelyn Owens, now Doris Owens Parrish, is the child of L. L. Owens; Lou C. (Luther C.) Read, Jack W. (Jack) Read, Brook F. (B. F.) Read and Dave Taylor (Taylor) Read are the children of Claudia Owens Read; Marion V. Owens, now Marion Owens Whitson, *Page 842 
and Clyde Latham (Clyde L.) Owens are the children of Clyde W. Owens; Mary Jarvis Murphy, now Mary E. Blount, is the child of Lucille Owens Murphy; B. F. Owens (B. O.) Dupree, Allen (A. R., Jr.) Dupree and Elizabeth Dupree, now Brown, are the children of Annie O. Dupree, and Raymond Leggett is the child of Mabel Owens Leggett.
In verified petition filed in said proceeding it is alleged: That the minor children above named are represented "by Clarence Latham as their next friend who has been thereunto duly appointed by the court"; (the record contains an order to that effect); that after the death of the testatrix the petitioners H. S. Owens, Claudia Read and her husband, J. W. Read, Clyde W. Owens, Lucille Murphy and her husband, C. L. Murphy, Annie B. Dupree and her husband, A. R. Dupree, and Mabel Leggett and her husband, O. R. Leggett, believing that under the said will of Annie L. Owens that they, in common with L. L. Owens, were owners in fee of the said land, covenanted and agreed to sell their interest therein, and to convey a fee simple title therefor to the said L. L. Owens for the sum of $4,360, which is "a full and fair value of said land, subject to the life estate of B. F. Owens"; that after said contract was executed they were advised by counsel that the children of the said parties, to wit: the minors above named, who represent all of the parties in interest to this cause, own a present vested interest in said property under said will; that the interest of the several minors would be materially promoted by a sale of said property for the reason that their interests cannot vest in possession during the life of their several parents, and same can represent no present income, and the character of the property, being farm property on which are situated a dwelling house and out-houses, is such as to require constant repairs; and that the petitioners believe that a public sale of the property would not yield as large an income as the amount agreed to be paid by said L. L. Owens, because of the "super-incumbent life-estate of B. F. Owens, the said L. L. Owens being the son of B. F. Owens, and all of said petitioners are anxious that said contract be consummated." Whereupon the petitioners pray the court to order a private sale of the said property through a commissioner in accordance with contract above stated.
The said next friend of the above named minors filed a supplemental petition in which it is stated: That he is personally acquainted with the property described in the above petition, and believes that a sale in accordance with the prayer of petitioners would materially promote the interest of said minors; that he is advised and believes that said minors have a present vested interest in said property, and asks that the court adjudge their several rights and interests, and order the payment therefor into the court "as in such cases provided by law." *Page 843 
Thereupon, on 6 January, 1910, the clerk of the Superior Court signed an order in which, after reciting that the cause coming on for hearing before him upon the petition, and all the parties being regularly before the court — "the minors by their next friend, Clarence Latham, who has filed a supplemental petition," and that "it appearing to the court that a sale of the land, in accordance with the agreement of sale set out in the petition would materially promote the interest of said minors," it is "ordered, adjudged and decreed that H. S. Ward be and he is hereby constituted and appointed commissioner of this court, without fee or compensation as such . . . and authorized and empowered to sell the lands and property described in the petition, by a private sale, and to execute a title deed therefor, in fee simple, subject to the life estate of B. F. Owens, and to report the said sale to this court." The order further directed the commissioner "to deposit the proceeds of the said sale in the Bank of Plymouth to await the judgment of this court, as to the several rights of the minors and this cause is continued to await the judgment of this court upon a construction of their rights under said will." And it is further ordered and decreed therein that Clarence Latham be, and he is thereby appointed trustee for any and all unborn children of the first named devisees, to wit, H. S. Owens, L. L. Owens, Claudia Read, C. W. Owens, Lucille Murphy and Annie Dupree, and that C. R. Leggett be and is appointed trustee for unborn children of Mabel Leggett.
Thereafter, on 11 January, 1910, G.S. Ferguson, judge riding the First Judicial District, entered an order in said proceeding, in which after reciting that "this cause coming now before me at chambers, upon the foregoing petition and affidavit, and that the court finds as a fact, that the interest of the minors would be materially promoted by a sale of said property," it is adjudged "that the foregoing decree of . . . clerk of the superior court, be and the same is hereby in all respects confirmed."
Thereafter, on 14 January, 1910, H. S. Ward, commissioner, reported "To the Honorable, the Superior Court" that pursuant to decree of 6 January, 1910, he had bargained and sold the lands and tenements described in the petition to L. L. Owens for the sum of $4,360, which amount "is a full and fair price therefor, and stands ready to execute the deed upon the confirmation of his said sale." Then, after reciting the amount which H. S. Owens, Claudia Read, Clyde Owens, Lucille Murphy, Annie Dupree and Mabel Leggett and their children, respectively, would receive out of the purchase price, the commissioner reported that certain named devisees in the said will are still of child bearing age and future born children may be expected to share in the said fund, and further reciting that he is advised that a certain unborn *Page 844 
child is then in esse, he asked that he be authorized to pay the said money into the hands of said trustee for the said afterborn child or children.
Upon this report and on 14 January, 1910, the clerk, finding that the sale reported was a fair one and the consideration thereof was full and sufficient and that the interests of the minors, parties to the action, would be materially promoted by a consummation of the sale, "ordered, adjudged and decreed that the said commissioner, in compliance with his bargain and contract of sale herein reported, execute to the said L. L. Owens a title deed in fee simple for the lands described in the petition"; and, after further adjudging the portion of the purchase price to which the several devisees, parents and their children, respectively, as set out in the report, would be entitled, to be divided between them by the commissioner according to the annuity table set out in section 1627 of the Revisal of 1905 — now C. S., 1791, "it is further ordered that the commissioner pay to Onward W. Leggett, trustee for unborn children the part of the funds in his hands accruing to the children of Mabel Leggett, and that his receipt therefor shall be sufficient voucher"; and further directed the said trustee "to deposit same in the Bank of Plymouth, subject to the further orders of this court."
On 18 January, 1910, the clerk of Superior Court entered an order in the cause, revoking in that particular the order theretofore made appointing Clarence Latham trustee for unborn children of the parties to said proceeding, other than those of Mabel Leggett, and ordered and adjudged that J. W. Read be appointed trustee for the unborn children of Claudia Read, if any; that C. W. Owens be appointed trustee for the unborn children of himself; that C. L. Murphy be appointed trustee for the unborn children of Lucille Murphy, and that A. R. Dupree be appointed trustee for the unborn children of Annie S. Owens, and further ordered that "the said trustees are hereby authorized and empowered to receive from the commissioner appointed in this cause any part of the fund accruing to their said children now living, that may accrue hereafter to any children now unborn, and the receipt therefor, as such trustee, is sufficient voucher in the hands of said commissioner."
Thereafter, on 20 January, 1910, G.S. Ferguson, Judge, entered an order which reads: "This cause being now before the undersigned Judge of the Superior Court, upon the report of the sale and the confirmation of the clerk, it is hereby ordered, adjudged and decreed that the decree of the clerk be and the same is hereby in all respects confirmed."
H. S. Ward, acting as commissioner under the authority conferred by said proceeding, by deed dated 14 January, 1910, and delivered on or about 21 January, 1910, purported to convey the lands in question to L. L. Owens and wife, Mary Owens, and "it is through this deed that *Page 845 
the defendants in this proceeding claim title. By deeds duly recorded in Washington County the defendants trace their title to the parties described in their respective answers to L. L. Owens."
The clerk testified and the court finds that, in accordance with the orders and decrees entered in said proceeding, the value of the life estate of the respective children of Annie L. Owens was computed and the value so computed was paid to each, and the balance was paid to the guardians of each set of children, the guardians being the respective parents of the children, and being those appointed by the clerk of Superior Court as shown in special proceeding docket and as set out in this record.
III. Since L. L. Owens and his wife took possession in 1910 of the lands in question, he and those claiming under him have been in actual possession thereof, claiming to be absolute owners, and none of the plaintiffs has been in possession of or attempted to exercise any control over same.
IV. After L. L. Owens received his deed from Ward, commissioner, the properties were subdivided into city lots and sold. Numerous residences have been built on these lots by the purchasers from L. L. Owens or by the grantees of said purchasers. Washington County purchased part of the land for a school site, and has erected thereon a brick school building of the value of approximately $35,000. One lot on the north side of the road claimed by respondent Marie Ivachiw was sold to B. F. Read, and by him and his wife to Doris Read, wife of J. W. Read. J. W. Read and B. F. Read are petitioners in the present action.
Upon the foregoing findings and the deeds and records which were offered, the court, being of that opinion, adjudged and decreed (1) that the plaintiffs own no interest in the lands in question and are not entitled to recover, and (2) that the defendants are sole seized of the parts of the said lands described in their answers.
Plaintiffs appeal to Supreme Court and assign error.
The impression is gained from a careful perusal of the record that the judgment below should be affirmed.
In the first place, there is much in the suggestion that the devise to the children of Annie L. Owens was intended to be in fee simple, determinable upon their dying without heirs. C. S., 1737; Willis v. TrustCo., 183 N.C. 267, 111 S.E. 166. It is provided by C. S., 4162, that when real estate is devised to any person, the same shall be held in fee *Page 846 
simple, unless such devise shall, in plain and express words show, or it shall be plainly intended by the will, or some part thereof, that the testator intended to convey an estate of less dignity. Jolley v. Humphries,204 N.C. 672, 167 S.E. 417. There is also authority for the position that where it appears from the context of a will that the word "children" has been inaccurately used, when heirs or heirs of the body was intended, such meaning may be ascribed to the inaccurate expression, and the intention of the testator thus effectuated. Cole v. Robinson, 23 N.C. 541. This view may find support in items three and four of the will. In these items it is noteworthy the testatrix does not say her son Henry and his children and her daughter Claudia and her children, respectively, are "to have equal shares with the others." The gifts are to Henry and to Claudia, and each is charged with the value of a lot which the testatrix, during her lifetime, had given to each of them.
But passing this, and conceding that the children of Mrs. Owens did not take fees, but life estates only, with remainders in fee vested in the grandchildren, subject to be divested by their predeceasing their parents, it does not follow that the sale of the land in 1910 by Ward, commissioner, was void and of no effect. C. S., 3234; Baggett v. Jackson, 160 N.C. 26,75 S.E. 86.
All of the present petitioners who were then in esse, sixteen in number, were parties to that proceeding, and at least one member of each class of remaindermen was present to represent the class. Lumber Co. v. Herrington,183 N.C. 85, 110 S.E. 656.
The jurisdiction of the Superior Court is not derivative in matters of this kind originating before the clerk. He is but a part of the same court.Cf. Keen v. Parker, 217 N.C. 378, 8 S.E.2d 209. For this reason it is provided by C. S., 637, that whenever a civil action or special proceeding begun before the clerk of a Superior Court is "for any ground whatever" sent to the Superior Court before the judge, the judge shall have jurisdiction; and it is his duty, upon request of either party, to proceed to hear and determine all matters in controversy in such proceeding. It has been held that even when the proceeding originally had before the clerk is void for want of jurisdiction, the Superior Court may yet proceed in the matter. Williams v. Dunn, 158 N.C. 399, 74 S.E. 99; In re Anderson,132 N.C. 243, 43 S.E. 649.
Moreover, the parties being the same and the subject matter identical, there is no reason why the irregularities, if any, in the proceeding of 1909-1910 may not now be cured in this proceeding, if need be. Roberts v.Roberts, 143 N.C. 309, 55 S.E. 721. Full value has heretofore been paid for the property. A proceeding had more than thirty years ago, upon the strength of which titles have passed and valuable improvements *Page 847 
have been erected on the property, ought not to be upset except for compelling reasons, which do not appear on this record. Ipock v. Bank,206 N.C. 791, 175 S.E. 127.
Finally, it is to be observed that the deed of Ward, commissioner, being similar to a deed from a stranger, Amis v. Stephens, 111 N.C. 172,16 S.E. 17, or one not connected with the cotenancy, McCulloh v. Daniel,102 N.C. 529, 9 S.E. 413, was manifestly colorable title, Lumber Co.v. Cedar Works, 165 N.C. 83, 80 S.E. 982, and the cotenants were barred by seven years adverse possession thereunder, even as to those, if any, who were not parties to the proceeding. Alexander v. Cedar Works,177 N.C. 137, 98 S.E. 312; Lumber Co. v. Cedar Works, supra. The case is not like Cooley v. Lee, 170 N.C. 18, 86 S.E. 720, where claim of title was under deeds of purchase from the cotenants. Here, the commissioner's deed which closely resembles a deed from a third person, was color of title, and seven years adverse possession thereunder, "ripened it into a perfect title." Johnson v. Farlow, 35 N.C. 84; Wilson v.Brown, 134 N.C. 400, 46 S.E. 762.
In Greenleaf v. Bartlett, 146 N.C. 495, 60 S.E. 419, this Court adopted the dissenting views of Chief Justice Taney and Justice Catron inMoore v. Brown, 11 How. (U.S.), 414, where it was said that if every legal defect in the title papers of a purchaser in possession, as they appear on the record, may be used against him after the lapse of seven years, the law itself is a nullity and protects nobody. The statute has no reference to titles good in themselves, but was intended to protect apparent titles, void in law, and supply a defense where none existed without its aid. Its object is repose. It operates inflexibly and on principle, regardless of particular cases of hardship. The condition of society and the protection of ignorance, as to what the law was, required the adoption of this rule. The law should be liberally construed.
In any event, therefore, all of the petitioners, not under disability, are barred by the seven years statute of limitations. C. S., 428.
In other words, even if the invalidity of the proceeding of 1909-1910 be conceded, which it is not, all of the petitioners, not under disability, are barred by the lapse of time. So far as they are concerned, regardless of the ground upon which it is put, the case was properly dismissed. Some of those thus barred by the statute of limitations were not in being at the time of the proceeding, but have since become of age. It can make no difference whether they were parties to the proceeding or not. The flight of time is inexorable, and the statute of repose is inflexible.
In this view of the matter, the only question remaining is whether the proceeding which resulted in the sale of 1910 is sufficient to estop those, under disability, who may or may not have been parties thereto, but who were represented therein by all the members of their respective *Page 848 
classes then in esse. The cases of Lumber Co. v. Herrington, supra; Ryderv. Oates, 173 N.C. 569, 92 S.E. 508; and Springs v. Scott, 132 N.C. 548,44 S.E. 116, would seem to suggest an affirmative answer.
The petitioners under disability, however, take the position that the proceeding was without form and void and hence nugatory as to them. Of course, an argument can always be made against an irregular proceeding. The one presently advanced did not prevail in the court below, and it is not accepted here.
The proceeding is not so fatally defective as to render it void. Smithv. Gudger, 133 N.C. 627, 45 S.E. 955. The petitioners, under disability, were represented therein, both by trustees appointed for the purpose and by members of their respective classes; it was found that a sale would best subserve the interests of all; full value was paid for the property at the time, and the sale was approved by the judge of the Superior Court. Ex parte Dodd, 62 N.C. 97. The final order of confirmation seems to have been made at term. It was not incumbent upon the purchaser to see that the money paid for the property was properly disbursed. Pendleton v. Williams, 175 N.C. 248, 95 S.E. 500; Bullock v.Oil Co., 165 N.C. 63, 80 S.E. 972. It appears from the clerk's testimony that the purchase money was paid to the life tenants according to the computed value of their respective life estates, and "the balance was paid to the guardians of each set of grandchildren, . . . appointed by the clerk of the Superior Court, . . . being the respective parents of the children." There is no suggestion of any imposition or overreaching in the matter. Starnes v. Thompson, 173 N.C. 466, 92 S.E. 259.
Nor is this all. Some of the present petitioners were parties to the proceeding in 1909-1910; they have seen the locus in quo subdivided into building lots and grow from a vacant block into a thickly settled portion of the town of Plymouth; two of them have subsequently purchased a lot therein and acquired title under the deed made by Ward, commissioner, in 1910, later transferred it and then sold it to one of the defendants herein. Hence, their present assertion of claim in remainder is contradicted by their later deeds. A brick school building, valued at approximately $35,000.00, has also been erected on the property in reliance upon the validity of the commissioner's deed.
The point is stressed that no jurisdiction was acquired by the Superior Court because the proceeding was erroneously begun before the clerk and "went before the judge only for his approval of the order of sale and the decree of the clerk confirming it." If this position be accepted we would have the "anomaly," decried in Roseman v. Roseman, 127 N.C. 494, *Page 849 37 S.E. 518, of a proceeding declared void, not because the petitioners entered the wrong court, but because they entered through the wrong door. The enactment of C. S., 637, was to prevent such "useless countermarching" at the expense of innocent persons. "Even if the proceeding before the clerk had been without authority, the judge could retain jurisdiction after the action was brought before him." Ryder v.Oates, supra. It is established by numerous decisions that the clerk is but a part of the Superior Court, and when a proceeding of this character is brought before the judge for his approval, he is vested with ample authority to deal with it. Williams v. Dunn, supra; Smith v. Gudger, supra;In re Anderson, supra.
The judgment below is
Affirmed.