SPRINGS v. SCOTT.

(Filed May 5, 1903.)

1. JURISDICTION—*Superior Court—Clerk Superior Court—Appeal.*

Where an action is wrongfully brought before the clerk of the superior court and is taken to the superior court by appeal, the superior court having original jurisdiction, it will be retained for hearing.

2. PARTITION—*Sale—Remainders—Estates.*

The court has the power to order the sale of real estate limited to a tenant for life, with remainder to children or issue, upon failure thereof, over to persons all or some of whom are not *in esse,* when one of the class being first in remainder after the expiration of the life estate is *in esse,* and a party to the proceeding, to represent the class, and that upon decree passed, and sale and title made pursuant thereto, the purchaser acquires a perfect title as against all persons *in esse* or *in posse.*

3. PARTITION — *Sale—Remainders—Contingent Remainders—Trusts and Trustees.*

Where an estate is vested in a trustee to preserve contingent remainders and limitations, the court may, upon petition of the life tenant and the trustee, with such of the remaindermen as may be *in esse,* proceed to order the sale, and bind all persons either *in esse* or *in posse.*

4. PARTITION—*Sale—Remainders—Vested Interests—Acts 1903, Ch. 99.*

> Since Acts 1903, ch. 99, the court has the power, when there is a vested interest in real estate and a contingent remainder over to persons who are not in being, or when the contingency has not yet happened which will determine who the remaindermen are, to order the sale by conforming to the procedure prescribed by the act. The act is constitutional, and applies to estates created prior to its enactment.

5. PARTITION—*Sale—Remainders—Investments—Judicial Sales.*

> Where real estate is sold under order of the court, the decree must provide for investment of the fund in such way as the court may deem best for the protection of all persons who have or may have remote or contingent interests.

ACTION by E. B. Springs and others against J. M. Scott and others, heard by Judge *Thomas J. Shaw,* at March Term, 1903, of the Superior Court of MECKLENBURG County. From a judgment overruling the demurrer, the defendants appealed.

*Jones & Tillett,* for the plaintiff.
*Burwell & Cansler,* for the defendant.

CONNOR, J. This is a special proceeding instituted in the Superior Court of Mecklenburg County for the purpose of obtaining an order for the sale of the land described in the petition for partition. The plaintiff and the *feme* defendant are the children and devisees of Julia Springs, deceased— the plaintiff, E. B. Springs, appearing in his own behalf and as trustee of Alva C. Springs. The petitioners aver that they together with the *feme* defendant are seized as tenants in common of a lot in the city of Charlotte under the provisions of Item 5 of the will of their mother, the late Julia B. Springs, which is in the following language: "I give and bequeath unto my son Alva C. Springs one hundred dollars. I also wish his expenses paid here and back to his home when

I die. I also give him equal with the rest of the children, but he can only receive the interest during his life; at his death the interest will be paid to his children until they are of age, and if no children or heirs of his body, it must be equally divided among his brothers and sisters or their heirs. I appoint Eli Springs his trustee." Alva C. Springs has no children, and the said parties desire to have partition of the land; that it is for the best interest of all concerned that the partition be made, and owing to the number of shares and the character of the property, actual partition can not be made, and it is necessary to have a sale for partition. The defendants demur to the petition and for cause of demurrer say:

"1.   That it appearing from the plaintiff's complaint and particularly from the will of said Julia B. Springs that the interest therein devised to Alva C. Springs is for his life only, and that after the death of Alva C. Springs there is a limitation over to his children until they are of age, and if no children or heirs of his body, to his brothers and sisters or their heirs, and it can not now be known who the heirs are who will be entitled to take upon the death of said Alva C. Springs.

2.   That the heirs of said Alva C. Springs are not made parties to this action and that the said heirs are necessary parties.

3.   That this court has no jurisdiction to order a sale of the land described in the complaint."

The court overruled the demurrer and directed a sale of the land. The defendant appealed to the judge who affirmed the judgment of the clerk and directed that the cause be retained for further hearing upon the coming in of the report. From this judgment the defendants appealed to this court.

The only question therefore is whether, in the absence of any child of the said Alva to represent those next in remain-

der after his death, the court has the power to order the sale of the land. This would, under the decisions of this court, present a very serious if not insurmountable difficulty, but for the presence of the trustee to represent and preserve the interest of such children as may be born to the said Alva C. Springs. To the suggestion that this proceeding invoking the equitable powers of the court, should have been instituted in the Superior Court in term, in which we concur, it is sufficient to say that the case now being in the Superior Court by appeal will be retained, and all necessary amendments will be deemed to have been made, or, if necessary, be made in this court. *Elliott v. Tyson,* 117 N. C., 116, in which the authorities are collected. The power of the court to order the sale of real estate limited by deed or will to persons not *in esse* or upon contingent remainders, has been so often before this court that it would seem there could be no doubt as to the law in this State. It is manifest that in the opinion of the profession the question is not regarded as at rest. The eminent counsel who argued this case so informed us. There is a large quantity of real estate in this State, especially in the towns and cities, the title to which is in such a condition by reason of contingent limitations that it can neither be sold nor improved, thereby being a burden on those who own the life estate, bringing no income and entailing a heavy expense to them by way of taxes and assessments for paving and other public improvements. We are told by counsel that the decisions of this court are not in accord with those of other jurisdictions in regard to the power of the court to order the sale of property, the title to which is thus fettered by limitations. Our attention was called in the argument and brief of counsel to an Act of the General Assembly passed at its last session, Laws 1903, Ch. 99, and the plaintiffs insist that, as this proceeding was instituted since the ratification of the Act, the court, if it should be of the opinion

that under the law as it existed prior thereto the plaintiffs are not entitled to relief, will find in the Act the power to give the relief demanded. In *Watson v. Watson,* 56 N. C., 400, this court held that "a court of equity has no power to order the sale of land for the purpose of converting it into a more beneficial property when it is limited in remainder to persons not *in esse."* The doctrine of this case was very materially modified by the court in *Ex Parte Dodd,* 62 N. C., 97, in which the same will was before the court. That was a petition for the sale of land. The devise was to "Orren L. Dodd during his life and at his death in· fee simple to his child or children if he has any living at his death, or the issue of any of the said Orren who may predecease him, failing such issue, however, the whole shall belong to and be equally divided amongst the children of his brother, Dr. Warren Dodd." The petitioners beside Orren were his chil-. dren, who were under age and represented by guardian. Dr. Warren Dodd had no children and was never married. Battle, J., says: "It is certain that if the land be devised to a person for life with an executory devise in fee to his children, the court can not order a sale of the land before the birth of any child, because, not being *in esse,* there can be no one before the court to represent its interests. Such was the case in *Watson v. Watson.* But if there be any children *in esse* in whom the estate in fee can vest, a sale may be ordered, because if their interests require it, they may be represented by their guardians, and this may be done although all of the children of the class may not yet have been born. Such is the case now before us, with the exception that there is an executory devise to the unborn children of another person depending upon the event of the tenant for life dying without leaving issue. Can this latter circumstance make any difference? We think not, because·the first class of children are the primary objects of the devisor's bounty,

and as they have vested remainders in fee and as their interests, as well as that of the tenant for life, will be promoted by having their land sold and the proceeds invested in other lands or in stocks or other securities for their use, the court of equity is authorized under the general power conferred by the Act of 1827, to which we have referred, to order the sale." It would seem that this language, which we have quoted at length because of its importance in the settlement of this question, can have no other meaning or construction than that, if the class *first in remainder* is represented, the court will take jurisdiction although there "is an executory devise to the unborn children of another person." This, as we shall see, is in accordance with the authorities both English and American.

In *Williams v. Hassell,* 74 N. C., 434, Reade, J., in discussing the power of the court in such cases, cites *Watson v. Watson, supra.* He makes no reference to *Ex Parte Dodd, supra.* He notices the *dictum* in *Watson v. Watson,* and then draws a distinction between a case in which the remainder is to *all* the children of the life tenant and one in which the remainder is to *such* children of his or her, as may be living at his or her death, in which case, as it can not be known who will be in the class, when the life estate falls in, there can be no one to represent the class. *Ex Parte Miller,* 90 N. C., 625; *Young v. Young,* 97 N. C., 132; *Whitesides v. Cooper,* 115 N. C., 570. It will be observed that the petition in that case was for a sale, there being no suggestion of a reinvestment of the proceeds to preserve the limitations. In *Ex Parte Dodd* the fund was ordered to be reinvested. The doctrine of representation is recognized in *Branch v. Griffin,* 94 N. C., 183; *Overman v. Simms,* 96 N. C., 451.

In *Aydlett v. Pendleton,* 111 N. C., 28, 32 Am. St. Rep., 776, the decision was based upon the ground that some of the parties interested objected to the sale. Shepherd, J., says:

"Thus it will be seen that even according to this construction of a deed there are future contingent interests, and though these may be represented by some person *in esse,* it can not authorize the court in decreeing a sale for partition when there is objection by some of the parties interested. It is true that in some instances a person may represent the interests of those of his class who are not *in esse,* but the court only decrees a sale in such cases where the interests of the parties will be materially and essentially promoted." The decision in *Overman v. Simms, supra,* is based upon the ground that no children had been born to the life tenant. *Irvin v. Clark,* 98 N. C., 437. In *Overman v. Tate,* 114 N. C., 571, the same limitation was dealt with by the court as in *Overman v. Simms.* In this case the sale was ordered. It appeared that a child had been born to the life tenant, Annie Tate. Shepherd, C. J., says: "The attention of the court in *Overman v. Simms, supra,* does not seem to have been directed to the fact that the limitations were in trust, nor was the child of Annie, now Mrs. Weaver, born at that time. These considerations render it unnecessary to review the former decisions of this court." In this case the *ulterior* limitation or executory devise was to Thomas R. Tate in fee, who was a party to the proceeding. So that the question decided in *Ex Parte Dodd* was not presented.

Without discussing the case of *Lipscombe v. Hodges,* 128 N. C., 57, it is sufficient to say that the syllabus, "The courts will not decree a sale of land when it is limited in remainder to persons not *in esse,*" is misleading. That was not the real ground upon which the case was decided. There was no trustee before the court in that case.

In *Justice v. Guion,* 76 N. C., 442, the land was conveyed to a trustee for the benefit of the plaintiff for life with remainder to her children who should survive her, to be equally divided between them, with a provision that if either of the

children should die before the mother, leaving a child or children, they should represent their parent. The trustee died and upon petition the court appointed a trustee, but refused to order a sale of the land for reinvestment. The life tenant had children. This court affirmed the judgment. It is evident from the opinion that the court in *Overman v. Simms, supra,* overlooked the fact that there was a trustee, and the limitations over were in trust. In *Simpson v. Wallace,* 83 N. C., 477, there was no trustee.

In *Smith v. Smith,* 118 N. C., 735, it is impossible to tell what the limitations were. It is simply stated that the lands were conveyed to certain persons "in trust for certain individuals therein mentioned with limitations and contingent interests to numerous other persons therein named." It does not appear whether the trustees were parties or whether there was any one *in esse* to represent those first in remainder. The opinion is equally indefinite and does not cite *Ex Parte Dodd,* but does cite *Watson v. Watson* and *Justice v. Guion.* The court overlooked the decision in *Overman v. Tate.* It must be conceded that these cases are in conflict with the current of authority in this State. It is unfortunate that a question of so great practical interest, involving the security of title to valuable real estate, should be in even apparent conflict.

In *Finch v. Finch,* 2 Vesey, 491, Lord Hardwicke says: "It is admitted to be necessary to bring the first person in entitled to the remainder and inheritance of the estate, if such is in being. . . . . If there is no first son in being, the court must take the facts as they stand. It would be a very good decree and no son born afterwards could dispute it unless he could show fraud, collusion or misbehavior in the performance of these trusts."

We have not discussed these cases for the purpose of overruling them, but to classify and distinguish them, and to show

that the language—used in *Ex Parte Dodd*, in respect to the power of the court to order a sale of land where there is an executory devise to persons unborn, there being members of a class next in remainder to a life tenant—has not been overruled or doubted. That question is not presented or decided in any of the cases we have cited. The importance of this will be manifest when we come to inquire into the validity of the statute of 1903.

For the same purpose we desire to cite some well considered cases from other States: In *Meade v. Mitchell*, 17 N. Y., 210, 72 Am. Dec., 455, the court says: "In the English Court of Chancery the general rule is that in actions affecting the title of land it is sufficient to bring before the court the person entitled to the first estate of inheritance, with those claiming prior interests, omitting those who might claim in remainder or reversion after such vested estate of inheritance. A decree against the person having the first estate of inheritance would bind those in remainder or reversion although the estate might afterwards vest in possession. . . . . I think therefore that under the general principles of equity practice, independent of our statute, a decree for partition in this case would be binding as well upon those who are parties to the suit as those who may hereafter come into being, entitled under the will to an interest in the premises. And as the Legislature has provided that a sale of the lands may be made in cases where partition can not be had, I can see no reason why the judgment for a sale should not be made as conclusive as a judgment in partition." The statute under consideration was very much as ours in respect to the procedure and received the approval of the court. This case was cited and approved in *Monarque v. Monarque*, 80 N. Y., 322. As late as 1892, in *Kent v. The Church*, 136 N. Y., 10, 18 L. R. A., 331, 32 Am. St. Rep., 693, Earle, C. J., says: "When an estate is vested in persons living, subject

only to the contingency that persons may be born who will have an interest therein, the living owners of the estate for all purposes of litigation in reference thereto and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, and stand not only for themselves but also for the persons unborn. This is a rule of convenience and almost of necessity. The rights of persons unborn are sufficiently cared for, if when the estate shall be sold under a regular and valid judgment its proceeds take its place and are secured in some way for such persons.

In *Baylor v. Dejarnette,* 54 Va., 152, the power of the court to order a sale in cases where property was thus fettered with limitations underwent a most exhaustive investigation, and in an able opinion the power was sustained. This case presented the exact question which we have before us.

In *Falkner v. Davis,* 59 Va., 651, 98 Am. Dec., 698, after a full examination and review of the authorities, both English and American, Moncure, P., says: "It seems to me therefore that the case of *Baylor v. Dejarnette* is a direct, binding authority in favor of the doctrine of representation before referred to and of its application to such a case as this."

The Supreme Court of Illinois in *Gavin v. Curtin,* 171 Ill., 640, 40 L. R. A., 776, quoting from *Voris v. Sloan,* 68 Ill., 588, says: "Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, when the aid of the Court of Chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust and do with the fund what he would have dictated had he anticipated the emergency. . . . . From very necessity, a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence that power is vested in the Court of

Chancery. . . . . The question remaining to be determined is whether the decree is binding upon any child or children that may be born to the defendant in error." This question is answered by the court in the affirmative.

In *Bofil v. Fisher*, 3 Rich. Eq. (S. C.), 1, 55 Am. Dec., 627, the same question was before the court. The Chancellor says: "It is necessary to the best interest of society, as I have before intimated, that there should be power lodged in some judicial tribunal authorized in certain exigencies to unfetter the titles of estates, otherwise they might be shackled to an inconvenient extent. In England the tenant for life, by suffering fine and recovery in which he alone is a party, may cut off all contingent limitations and remainders. In that country, courts of equity are in the habit under certain contingencies of doing the same thing in respect to the title, but with a more just regard to the rights of the remaindermen; for when that court by a sale divests the title of the contingent remaindermen in the property it preserves them for the fund." The power of the court of Chancery in the State was sustained.

At the April Term, 1901, of the Supreme Court of Tennessee, in *Ridley v. Holloday*, 106 Tenn., 607, 53 L. R. A., 477, 82 Am. St. Rep., 902, Beard, J., reviews the English and American cases upon the subject and says: "A Chancery Court has inherently, without the aid and in the absence of any inhibition of statute, jurisdiction and power to bind and conclude by its decree, converting realty into personalty, the rights and interests, whether legal or equitable, vested or contingent, of all persons whether *in esse or in posse* and whether *sui juris* or under disability, who are before the court either by service of process or by 'virtual representation,' but it must satisfactorily appear that such conversion is for the best interests of all the parties, and the decree must award the several parties the same interest in its proceeds which they

enjoyed in the realty, and provide for the protection of the same." He further says: "We have examined the cases from North Carolina referred to in the able and exhaustive brief of counsel for the appellants, and while they are entitled to great consideration, we think they are overborne by the weight of authority." 15 Enc. Pl. & Pr., 646, 647.

We might, but for the length of this opinion, cite authorities from almost every State in the Union and from the English Reports showing a uniform current of the best considered judicial opinions upon this very important question. This is important as bearing upon the constitutional question raised by the demurrer in regard to the validity of the Act of 1903, the first section of which is as follows: "That in all cases where there is a vested interest in real estate, and a contingent remainder over to the persons who are not in being, or when the contingency has not yet happened which will determine who the remaindermen are, there may be a sale of the property by a proceeding in the Superior Court at term time, which proceeding shall be conducted in the manner pointed out in this Act; provided that this provision shall not apply to any case where the courts now have power to order a sale of contingent interests in land." (The other section prescribes the mode of procedure.) As Alva C. Springs has no child living, this case cannot be brought within the rule laid down in *Ex Parte Dodd,* and although there are many authorities holding that the presence of the life tenant is sufficient to sustain the jurisdiction, we do not propose to go beyond the principle of that case. Therefore, but for the presence of a trustee, the plaintiff would not be entitled to relief. It is said, however, that the language of the will does not vest in Eli Springs any title to the property, and that he, therefore, can not represent the interests of all parties *in esse* and *in posse.* The language of the will indicates a purpose on the part of the devisor that the property shall be

sold and converted into money. She says: "But he can only receive the interest during his life. At his death the interest shall be paid to his children until they are of age." We assume, though it is not so stated, that she had other property which was given to her children by her will. If she had contemplated that the title to this real estate should continue in common to all of her children during the life of Alva and until all of his children should arrive at full age, such purpose would have been indicated in unmistakable terms. If we correctly construe the will, Eli Springs, in order to discharge the trust imposed upon him, must take hold and invest the money upon which interest is to be paid. We think the words, "I appoint Eli Springs his trustee," sufficient to vest in him such interest in the property as may be necessary to enable him to execute the trust, and that he is authorized to represent all parties in interest. *Overman v. Tate, supra.* If this should not be so, we think that the claim to relief is afforded by the Act of 1903. The demurrer suggests that "it is doubtful whether the Legislature had the power to pass a law interfering with or changing the rights of the parties to this property." We are thus confronted with the constitutional question as to the power of the Legislature to pass the Act and its application to wills and deeds executed prior to its passage. It is, of course, conceded that the Legislature has no power to destroy or interfere with vested rights. Are such rights as may accrue to any children who may hereafter be born to Alva C. Springs within the meaning of this constitutional provision? This court in 1796, in *Lane v. Davis,* 2 N. C., 277, held that the Act of 1784 destroying estate tail was valid to bar a remainder dependent upon an estate tail in possession of a tenant in tail at the time of the passage of the Act. *Minge v. Gilmore,* 2 N. C., 279; Cooley Const. Lim., Sec. 440. "A bare expectancy is not such a vested right as will be protected by the constitutional provision." *Bass v.*

*Nav. Co.,* 111 N. C., 439, 19 L. R. A., 247.    It is well set-
tled that courts of equity, as they existed in the State prior
to the Constitution of 1869, possessed the power to order the
sale of lands of infants and tenants in common when partition
was impracticable, and to administer trusts.    We can not
do better than refer to the learned and exhaustive argument
of Mr. Moore in *Ex Parte Dodd, supra.*    It is equally clear
that the Superior Courts, under our present judicial system,
have the same power and equitable jurisdiction as the courts
of equity had prior to 1858.    *Barcello v. Hapgood,* 118 N.
C., 726, 728.

"Where property has been settled by will or deed for life
with limitations over to persons not in being, who are incom-
petent to exercise a legal judgment, the Legislature may au-
thorize a sale and the reinvestment of the proceeds for the
same uses, if such a course will be for the benefit of all con-
cerned or beneficial to some of them and not injurious to the
rest."    Hare's Am. Const. Law, 816.    "Such a sale simply
turns the property into another form where it may bear fruit
for the first taker, who would otherwise have a barren inheri-
tance and be postponed as regards real and substantial benefit
to persons yet unborn.    It can not, however, be properly
exercised unless the proceeds can be placed in trust and held
securely for the executory devisee or remainderman."    *Ibid,*
817.

In New York the question has received a careful considera-
tion.    In the case of *Brevoort v. Grace,* 53 N. Y., 245, 252,
after declaring that courts of equity have the power to au-
thorize the sale of lands belonging to infants *in esse,* the
court proceeds to say: "Doubts were expressed in some of the
cases whether this power extended to those not in being who
might thereafter be entitled to some estate in the premises.
The reason upon which the rule is based as to the former ap-
plies with equal force as to the latter.    In both, there is a

want of capacity to manage and preserve the property so as to protect the interests of those who are or may become entitled thereto, hence the necessity of devolving this duty upon the sovereign. For this purpose, the Legislature under our system represents and possesses the powers of sovereign authority and may discharge the duty by either general or special laws as will best protect the rights of those interested, although it is obvious that the former should be preferred in all cases when practicable."

In *Soheir v. Gen'l Hospital,* 3 Cush. (57 Mass.), 483, 497, the court says: "The Legislature authorizes a sale, taking care that the proceeds shall go to the trustees duly appointed in pursuance of the will of Benja Joy, for the use and benefit of those having the life estate and of those having the remainder under the will. This is depriving no one of his property, but is merely changing real into personal estate for the benefit of all parties in interest. This part of the resolve, therefore, is within the scope of the power exercised from the earliest time and repeatedly adjudged to be rightfully exercised by the Legislature. . . . . It is deemed indispensable that there should be a power in the Legislature to authorize a sale of the estates of infants, insane persons and persons not known or not in being, who can not act for themselves. The best interests of those persons and justice to others often require that such sales should be made. It would be attended with incalculable mischief, injuries and losses, if estates in which persons are interested, who have not capacity to act for themselves or are not in being, could under no circumstances be sold and perfect titles effected. But in such cases the Legislature, as *parens patriae,* can disentangle and unfetter the estates by authorizing a sale, taking precaution that the substantial rights of all parties are protected and secured."

In Pennsylvania, 14 S. & R., *Estep v. Hutchman,* (29

Pa.), 435, Gibson, being then Chief Justice, the court says: "Even in England, an act of Parliament is sometimes necessary to assist the almost unlimited power of the Chancellor. A conveyance made by persons authorized by the Legislature must then, it would seem, be *prima facie* evidence of good title in the vendee against all claiming under the vendor." The constitutionality of an Act upon this subject was sustained by the court. See also *Blagge v. Miles,* 1 Story, 426.

Article XV, Section 2, of the Constitution provides that, "The General Assembly shall regulate entails in such manner as to prevent perpetuities." While it is not necessary to hold that this language gives to the Legislature the power to pass either general or special laws destroying entails created before the enactment of such statutes, it would seem that the power is conferred to enact general laws vesting in the courts the power to deal with and regulate the sale of property entailed, to the end that perpetuities may be prevented. This construction of the provision is not only consistent with, but it would seem necessary to effectuate, the policy of the law to prevent entails hampering the sale of property, thus preventing its free alienation and improvement. This has always been recognized and enforced as a fundamental principle of American law. We think both upon principle and authority the statute is constitutional and authorizes the sale of real estate conveyed or devised before its enactment.

The importance of this question and the apparently unsettled condition of the law in this State leading to the passage of the Act of 1903, we think justifies the length of this opinion and the citation of the authorities. The Act carefully prescribes the procedure and if the courts shall be diligent to ascertain the facts in each case and proceed with caution in making orders therein, the purpose of the Legislature will be accomplished without doing violence, but rather in accordance with the principles of our jurisprudence and

the preservation and protection of the rights of parties. In this cause it will be advisable, when it shall come before the court, to set out in detail the condition of the property and of the parties, and in all respects conform to the procedure provided by the Act.

Upon a careful examination of the cases in our own Reports and those of other States, we are of the opinion:

1. That without regard to the Act of 1903, the court has the power to order the sale of real estate limited to a tenant for life with remainder to children or issue, upon failure thereof, over to persons, all or some of whom are not *in esse*, when one of the class being first in remainder after the expiration of the life estate is *in esse* and a party to the proceeding to represent the class, and that upon decree passed, and sale and title made pursuant thereto, the purchaser acquires a perfect title as against all persons *in esse* or *in posse*.

2. That when the estate is vested in a trustee to preserve contingent remainders and limitations the court may, upon petition of the life tenant and the trustee with such of the remaindermen as may be *in esse*, proceed to order the sale and bind all persons either *in esse* or *in posse*.

3. That since the Act of 1903, Chapter 99, the court has the power, when there is a vested interest in real estate and a contingent remainder over to persons who are not in being or when the contingency has not yet happened which will determine who the remaindermen are, to order the sale by conforming to the procedure prescribed by the Act.

4. That the Act is constitutional and applies to estates created prior to its enactment.

Of course in each of the classes named, the decree must provide for the investment of the fund in such way as the court may deem best for the protection of all persons who have or may have remote or contingent interests.

In the case before us, the judgment must be so modified

that the judge of the Superior Court of Mecklenburg County, in term, shall require the pleadings to be amended to conform to the procedure provided by the Act of 1903, and that all further proceedings, orders and decrees be in accordance therewith.

The plaintiffs will pay the costs of this court, to be recovered by them from the commissioner upon the sale of the property in controversy.

Judgment Modified and Affirmed.