Robert YALE, Ancillary Administrator of
the Estate of Joseph Dudley Schofield,
Deceased, Appellant,

v.

NATIONAL INDEMNITY COMPANY,
Appellee.

No. 77–2493.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1978.

Decided July 11, 1979.

William C. Warden, Jr., North Wilkesboro, N. C. (John E. Hall, McElwee, Hall & McElwee, North Wilkesboro, N. C., on brief), for appellant.

William C. Raper, Winston-Salem, N. C. (Allan R. Gitter, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., on brief), for appellee.

Before BRYAN and FIELD, Senior Circuit Judges, and PHILLIPS, Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

Plaintiff Robert Yale (Yale), as Ancillary Administrator of the Estate of Joseph D. Schofield, appeals the grant of summary judgment for the defendant, National Indemnity Company (National), in an action brought by Yale to recover the amount of a judgment obtained in a state court wrongful death action against National's insureds, Van Helman and Big-H Shows, Inc. On National's motion for summary judgment, the district court determined that the state court judgment was void for lack of jurisdiction and granted the motion. We reverse and remand for further proceedings.

## I

Plaintiff's intestate, Schofield, was allegedly shot to death in North Carolina in June 1973 by two men, Allen and Helman, who were then associated with Big-H Shows, Inc., a traveling carnival. Yale qualified as ancillary administrator and brought a wrongful death action in a North Carolina state court against Allen, Helman and Big-H Shows, Inc., alleging that Allen and Helman had killed Schofield in the course and scope of their employment by Big-H Shows, Inc.

In this state court wrongful death action, Yale obtained a substantial judgment for compensatory and punitive damages against Helman and Big-H Shows, Inc.[1] Armed with this judgment, Yale then commenced the instant action in a North Carolina state court against National as the liability insurer of Helman and Big-H Shows, Inc., alleging that the judgment was unsatisfied and that National was bound under its policy to pay it. National removed the action to the United States District Court for the Middle District of North Carolina under 28 U.S.C. § 1446, and in the removed action raised by answer both jurisdictional and substantive defenses. The substantive defenses were that the insurance policy did not cover the risk upon which liability had been adjudicated in the state court, and alternatively, that National was not bound on the risk because of the insured's failure to cooperate as required by the policy. The jurisdictional defenses were also two-fold: that the state judgment was void for lack of personal jurisdiction over either state defendant; and that because of procedural deficiencies leading to its entry following the state defendants' default, it was void because state law would so deem it.

## II

As the district court rightly recognized, a federal court asked to entertain an attack upon a state court judgment must look to the law of the rendering state to determine the exposure of that state's judgments to the particular kind of attack being made. *See Restatement of Judgments*, § 7, comment *a.*; § 8, comments *b., d.* (1942). Here, as the district court further recognized, the attack by National was, in traditional terms, collateral, being raised as a defense to a claim one of whose essential elements was the existence of the judgment. *Id.* § 11, comment *a. Powell v. Turpin*, 224 N.C. 67, 29 S.E.2d 26 (1944). On this basis the district court then applied the traditional rule, *Restatement of Judgments*, § 11, comment *b.*, as followed in North Carolina, *e. g.*, *Lumber Co. v. West*, 247 N.C. 699, 102 S.E.2d 248 (1958), that only void judgments are subject to collateral attack, and that a void judgment is only one that is rendered by a court lacking jurisdiction over the defendant or over the subject matter, or in violation of a procedural requirement so substantial that it is deemed by the rendering state to be void, *i.e.*, to be "jurisdictional."[2] As indicated, the district

---

1. State defendant Allen was never served with process, and the action proceeded as described against Helman and Big-H Shows, Inc. They are hereafter referred to collectively as the "state defendants."

2. However unsatisfactory may be the use of the "void and voidable," "direct and collateral" categories for analyzing problems of gaining relief from judgments, and however imminent may be their general demise, *see Restatement (Second) of Judgments, Introductory Note to Chap. 5 (Tent. Draft No. 6, 1979)*, they are firmly imbedded in current North Carolina decisional law, and our analysis of state law must therefore be within their terms.

court then rejected National's contention that the judgment was void for lack of personal jurisdiction as to either state defendant, but found it void for "jurisdictional" deficiencies in the procedure leading to its entry.[3] We agree that it was not void for lack of personal jurisdiction, but hold that under state law it was not void either for the procedural deficiencies relied upon by the district court. Accordingly, we conclude that the state judgment was not subject to collateral attack in the district court and that that court erred in granting summary judgment on the basis that it was.

### A. *Personal Jurisdiction*

■ Because we review judgments, not reasons, *Eltra Corp. v. Ringer,* 579 F.2d 294, 298 (4th Cir. 1978), we consider first defendant's contention, rejected by the district court, that the state judgment was void for lack of personal jurisdiction over either of the state insured defendants.

The state court's personal jurisdiction was challenged for claimed defects in the form and mode of service of process as to each of the state defendants. The district

court concluded that by reason of these defects service was ineffectual to subject either to personal jurisdiction.[4] It then concluded, however, that by posting a surety bond to secure release of its property attached by the plaintiff in ancillary proceedings, the state defendant Big-H Shows, Inc. had made a "general appearance" under North Carolina law that subjected it to personal jurisdiction. ·

■ We agree that under North Carolina statutory and decisional law the state court acquired personal jurisdiction over Big-H Shows, Inc. by reason of its "general appearance," if not by service of process. *See* N.C.Gen.Stat. § 1–75.7; *Vestal v. Moseley Vending Machine Co.,* 219 N.C. 468, 14 S.E.2d 427 (1941); *Bizzell v. Mitchell,* 195 N.C. 484, 142 S.E. 706 (1928); *and see Simms v. Mason's Stores, Inc.,* 285 N.C. 145, 203 S.E.2d 769 (1974).

This would suffice to dispose of defendant's contention that the state court judgment was void for lack of personal jurisdiction over either of its insured judgment debtors. We note however that the North

---

3. The district court did not consider a possible objection that National, as a "stranger" to the state court judgment, might lack standing to raise even "jurisdictional" objections collaterally. While suggestions may be found in some North Carolina cases that an insurer can only attack a judgment against its insured for "fraud or collusion," *see, e.g., Strickland v. Hughes,* 273 N.C. 481, 488, 160 S.E.2d 313, 318 (1968); *and see Manning v. State Farm Mut. Auto. Ins. Co.,* 235 F.Supp. 615, 617 (W.D.N.C.1964) (Craven, J.), we believe that if presented the question directly, North Carolina would allow collateral attack by an insurer on jurisdictional grounds, at least where, as here, neither insurer nor insured defended the prior action. *See Restatement (Second) of Judgments, § 107 (Tent. Draft No. 3, 1976); and see* 8 J. Appleman, *Insurance Law and Practice* § 4860, at 291 & n. 8 (1962). In appropriate cases North Carolina law permits an insurer to raise and litigate questions of policy coverage and, except where compulsory automobile liability insurance is involved, *see Jones v. State Farm Mut. Auto. Ins. Co.,* 270 N.C. 454, 155 S.E.2d 118 (1967), lack of cooperation by the insured, as defenses to an action on the policy by a judgment creditor of the insured. *See, e.g., Squires v. Textile Ins. Co.,* 250 N.C. 580, 108

S.E.2d 908 (1959). In any event, in view of our holding that the state judgment was not void for jurisdictional deficiencies, we can assume without directly finding that North Carolina courts would entertain a collateral attack on jurisdictional grounds by an insurer.

4. Though all three defendants, Allen, Helman, and Big-H Shows, Inc., were named in the caption of the summonses used for service, only Allen's name was inserted in the portion used to identify the defendants being "Summoned and Notified to appear . . . ." Two copies of these summonses (with other process) were served by hand delivery upon Helman, an officer (and allegedly the sole shareholder) of Big-H Shows, Inc. The process officer's return ·showed service upon both Helman and Big-H Shows, Inc. and upon this basis the state court concluded that Helman and Big-H Shows, Inc. "were duly served with process." The district court in the instant case concluded to the contrary, on the basis that under North Carolina statutory and decisional law the summons was fatally defective in form to subject either of the state defendants to personal jurisdiction because not "directed to" them as required by the controlling process rule, Rule 4(b) N.C.R.Civ.P.

Carolina case, *Russell v. Bea Staple Mfg. Co.,* 266 N.C. 531, 146 S.E.2d 459 (1966), relied upon by the district court in finding service of process ineffectual as to both state defendants, was subsequently overruled by the Supreme Court of North Carolina in *Wiles v. Welparnel Constr. Co., Inc.,* 295 N.C. 81, 243 S.E.2d 756 (1978), to the extent that *Russell* and the line of cases it represented were inconsistent with the facts in *Wiles.* In view of our holding that in any event personal jurisdiction was acquired over one of the insured state defendants, it may be that plaintiff has no interest in having the service of process question reconsidered.[5] Because the case is to be remanded, however, we think that it would be appropriate, if the plaintiff desires and if it becomes critical to decision, for the issue to be reconsidered by the district court in light of the intervening decision in *Wiles.* If it is reconsidered, we express no opinion on whether the *Wiles* decision should be held retroactively applicable to the facts of this case, nor if so whether it would dictate a contrary conclusion on the service of process issue. Those difficult questions of state law may not have to be addressed in this federal action, and if they must, they are better addressed in the first instance by the district court.

### B. *Procedural Irregularities*

The state court action was commenced on June 14, 1974. Although the state defendants made the general appearance noted above on June 19, 1974, no defendant had filed answer by August 28, 1974. On that date, the time for filing answer under state law having expired, an assistant clerk of the State Superior Court in which the action was pending entered an order entitled "Judgment by Default and Inquiry" against the state defendants. In the same order the clerk directed trial in the Superior Court "on the issue of damages only." The

case was then duly calendared and was called for trial at the September 1974 session of the proper superior court. No specific notice of this setting was given the state defendants, and none appeared in person or by counsel when the case was called for trial. A regularly assigned judge of the Superior Court proceeded to hear the case and took evidence adduced by the plaintiff Yale respecting the death, life expectancy, and statutory beneficiaries of the wrongful death decedent. The state judge found as fact that the state defendants had been served with process,[6] that a "default judgment" had been theretofore entered against them, that the matter was properly before the court on plaintiff's waiver of jury trial and following its proper calendaring for trial, and that no one had appeared for the defendants. He made further findings and conclusions respecting the merits of the case and entered judgment for the plaintiff awarding compensatory and punitive damages.

In the district court, National contended that the procedures leading to this judgment of the state superior court were deficient in two respects that independently made it void under North Carolina law. First, because North Carolina law in the form of its civil rule counterpart to Fed.R. Civ.P. 55(b)(1) does not authorize a clerk's entry of default judgment when the claim is for unliquidated damages as here, or against a defendant who has appeared in the action, as had the state defendants here. The district court agreed, citing *Roland v. W & L Motor Lines, Inc.,* 32 N.C.App. 288, 231 S.E.2d 685 (1977), a decision of North Carolina's intermediate appellate court. Secondly, because defendants were not given the three-day notice of hearing after entry of default that is required by North Carolina's civil rule counterpart to Fed.R. Civ.P. 55(b)(2). Again the district court

---

5. Presumably this could only be of practical significance if Helman's individual liability under the state judgment, in addition to that of Big-H Shows, Inc., were to become critical to the establishment of National's liability under the policy. Whether that possibility exists is not revealed on the record before us, and in any

event might turn upon further developments in the litigation.

6. The effect of Big-H Shows' "general appearance" was therefore not addressed in the state court.

agreed, citing *Taylor v. Triangle Porsche-Audi, Inc.,* 27 N.C.App. 711, 220 S.E.2d 806 (1975), and *Miller v. Belk,* 18 N.C.App. 70, 196 S.E.2d 44 (1973). For reasons that follow we conclude that under North Carolina law neither of these two undoubted procedural irregularities would subject the final state court judgment to collateral attack as void. We take them in order.

### 1. Unauthorized Entry of Judgment by Clerk

The judgment "by default and inquiry" entered by the assistant clerk of court was unauthorized by law when entered, though under earlier North Carolina law it would have been authorized.[7] If this were the final judgment in the state action it is clear that North Carolina would consider it void, hence subject to collateral as well as direct attack. North Carolina clerks of superior court have historically possessed a variety of pure judicial powers,[8] but their exercise of those powers has been rigorously confined to the express statutory authority upon which based, and departures of the kind in question here have frequently been held invalidating when properly challenged. *See, e. g., Ridge Community Investors, Inc. v. Berry,* 293 N.C. 688, 239 S.E.2d 566 (1977); *Pruden v. Keemer,* 262 N.C. 212, 136 S.E.2d 604 (1964). When a clerk's unauthorized exercise of judicial power has taken the form of a *final* judgment, as is possible in a variety of contexts in North Carolina practice, that judgment has been held void under direct attack both by motion[9] and independent action[10] even though the superior court of which the clerk is a judicial officer had both personal and sub-ject matter jurisdiction. Although the successful attacks appear all to have been direct, it seems clear that the North Carolina courts would hold such a final judgment by a clerk subject as well to collateral attack. *See Freeman on Judgments* (5th ed.) § 1283.

But the clerk's act under question here was not intended to be and was not a final judgment. Rather it was in literal form and legal effect an interlocutory order, whether considered as a confused effort to enter the formerly authorized "judgment by default and inquiry," *see DeHoff v. Black,* 206 N.C. 687, 175 S.E. 179 (1934), or as an equally confused attempt to enter the "default" contemplated by controlling Rule 55(a), N.C.R.Civ.P. North Carolina, of course, takes the traditional view that interlocutory orders are subject to change and to direct attack throughout the proceedings in which entered; that unless changed or vacated *sua sponte* or on direct party attack they are merged in any final judgment; and that they are thereafter subject to attack only as an incident to attack upon the final judgment. *See, e. g., Skidmore v. Austin,* 261 N.C. 713, 136 S.E.2d 99 (1964); 2 *McIntosh, North Carolina Practice & Procedure* §§ 1611, 1782(7) (2d ed. 1956).

Had a direct attack by motion in the cause been made upon the clerk's interlocutory "judgment by default and inquiry" at any time before entry of final judgment in the state action, it is clear that it would have been held invalid. Furthermore, had the clerk purported to enter a final judgment by default where, as here, the defendants had appeared in the action, it would

---

7. Rule 55, N.C.R.Civ.P. presently controls and it makes no provision for such a "default and inquiry judgment" by a clerk. Under former N.C.Gen.Stat. § 1–212, repealed effective January 1, 1970, such an order might have been appropriate.

8. These derive solely from statute; the clerk has no constitutional power as a judicial officer, N.C.Const., Art. IV, § 12(3); *In re Barker,* 210 N.C. 617, 188 S.E. 205 (1936). In the exercise of the limited statutory judicial powers of the office, the clerk is "a judicial officer of the superior court division, and not a separate court." N.C.Gen.Stat. § 7A–40 (1969).

9. *E.g., Pruden v. Keemer,* 262 N.C. 212, 136 S.E.2d 604 (1964) (unauthorized judgment by default final in boundary proceeding); *Johnston County v. Ellis,* 226 N.C. 268, 38 S.E.2d 31 (1946) (same, in mortgage foreclosure); *High v. Pearce,* 220 N.C. 266, 17 S.E.2d 108 (1941) (unauthorized final consent judgment).

10. *E.g., Ridge Community Investors, Inc. v. Berry,* 293 N.C. 688, 239 S.E.2d 566 (1977) (foreclosure of materialmen's lien); *Boone v. Sparrow,* 235 N.C. 396, 70 S.E.2d 204 (1952) (foreclosure of tax lien).

have been void, hence subject to collateral attack under state law. The *Taylor* case, relied upon by the district court for the proposition that the clerk's judgment here was void, involved such a final judgment. But that is not of course what is involved in the state case in question. Here, following the clerk's entry of an interlocutory order, the action proceeded to trial and final judgment under the circumstances earlier described. It is that final judgment of the state superior court that is under collateral attack in this action, and it is the vulnerability of that final judgment that is drawn in question.

■ The question thus comes to the effect of a concededly invalid interlocutory order by a North Carolina clerk of superior court upon an otherwise valid [11] final judgment regularly rendered in the action by a judge of the superior court. On this question North Carolina law seems clear: any "jurisdictional" deficiency in the clerk's interlocutory order is cured by the assumption of superseding jurisdiction by the superior court judge, who may also wholly cure any procedural irregularity in the clerk's order by express or implicit exercise of that jurisdiction.

In North Carolina practice, actions in which a clerk has entered an interlocutory order may be brought before a superior court judge for further proceedings in a variety of ways including intra-court "appeal," transfer by the clerk, or motion of a party. However this occurs,[12] superseding jurisdiction is thereupon conferred upon the judge by statute [13] and it becomes "his duty upon request of either party" to "hear and determine all matters in controversy" and to render final judgment. *See, e.g., Potts v. Howser,* 267 N.C. 484, 148 S.E.2d 836 (1966); *Langley v. Langley,* 236 N.C. 184, 72 S.E.2d 235 (1952); *McDaniel v. Leggett,* 224 N.C. 806, 32 S.E.2d 602 (1944); *Roseman v. Roseman,* 127 N.C. 494, 37 S.E. 518 (1900). Under this statute, as under prior law [14] this superseding jurisdiction is exercised just as if the action had come originally before the judge. *See, e.g., Rich v. Norfolk & Southern Ry. Co.,* 244 N.C. 175, 92 S.E.2d 768 (1956). In the course of its exercise the judge may not only vacate or modify an invalid or erroneous interlocutory order entered by a clerk, but validate one lying outside the clerk's statutory power but within the judge's "jurisdiction." *Springs v. Scott,* 132 N.C. 548, 44 S.E. 116 (1906) (validating unauthorized order for sale of land); *and see Cheshire v. First*

11. No challenge has been made or is possible on the record to the subject matter jurisdiction of the state judgment court, and its personal jurisdiction has here been established in respect of at least one of the insured state defendants. See Part II. A.

12. Except in probate matters where special rules not applicable here apply. *See In re Estate of Lowther,* 271 N.C. 345, 156 S.E.2d 693 (1967).

13. N.C.Gen.Stat. § 1–276. "Whenever a civil action or special proceeding begun before the clerk of a superior court is for any ground whatever sent to the superior court before the judge, the judge has jurisdiction; and it is his duty, upon the request of either party, to proceed to hear and determine all matters in controversy in such action, unless it appears to him that justice would be more cheaply and speedily administered by sending the action back to be proceeded in before the clerk, in which case he may do so."

   Though the statute speaks of a "civil action or special proceeding *begun* before the clerk,"

(emphasis supplied), it has been held to confer upon the superior court judge jurisdiction to act on a clerk's unauthorized default judgment that was occasioned by *motion* before the clerk. *Rich v. Norfolk & Southern Ry. Co.,* 244 N.C. 175, 92 S.E.2d 768 (1956).

14. The statute was originally enacted in 1887. Earlier it had already been held that "when a case commenced wrongfully before the clerk gets into the superior court by appeal or otherwise, and the latter has jurisdiction of the whole cause and can proceed to its termination, it will do so, and make all needful amendments of process to make the jurisdiction effectual." *Capps v. Capps,* 85 N.C. 408, 410–11 (1881). *See also, Cheatham v. Crews,* 81 N.C. 343 (1879). It is said that the statute was enacted to insure that the judge on appeal, in matters properly brought before the clerk initially, would have power to take action which for jurisdictional reasons the clerk could not have taken. *Roseman v. Roseman,* 127 N.C. 494, 497, 37 S.E. 518 (1900).

*Presbyterian Church,* 221 N.C. 205, 19 S.E.2d 855 (1942) (validating unauthorized appointment of trustee).

In the state case here, with the action properly calendared and before him for trial, the state superior court judge therefore had it within his power to validate the clerk's interlocutory order as an entry of default under Rule 55(a) N.C.R.Civ.P., and to make a first instance determination of default for failure to appear to defend at trial. Either or both of these might be found implicit [15] in the final judgment rendered following the receipt of evidence. Whether this should be found here might have been explored by a direct attack on the final judgment by timely appeal, motion in the cause, or possibly independent action challenging the procedural irregularity, *see, e. g., Menzel v. Menzel,* 250 N.C. 649, 110 S.E.2d 333 (1959); *Collins v. North Carolina Highway Commission,* 237 N.C. 277, 74 S.E.2d 709 (1953), but that question is not properly before us on this collateral attack and we do not address it. In any event, when the state superior court judge exercised his statutory "jurisdiction" to "hear and determine all matters in controversy," culminating in the rendition of a final judgment, this served to remove by supersession any "jurisdictional" deficiency in the proceedings resulting from the clerk's unauthorized interlocutory order. The final judgment was then subject to collateral attack only for lack of personal or subject matter jurisdiction in the state superior court. Neither of these grounds is available,[16] and, as indicated, the assumption of jurisdiction by the judge of superior court cured any "jurisdictional" deficiency in the clerk's interlocutory order.

### 2. Lack of Notice Required by Rule 55(b)(2), N.C.R.Civ.P.

Rule 55(b)(2), N.C.R.Civ.P., as does its federal counterpart, requires that three days' notice of a hearing on application for default judgment be given a defendant in default who has appeared in the action. No such notice was given in the state action, and the district court gave this as an additional basis for finding the state judgment void, citing *Miller v. Belk,* 18 N.C.App. 70, 196 S.E.2d 44 (1973), and *Taylor v. Triangle Porsche-Audi, Inc.,* 27 N.C.App. 711, 220 S.E.2d 806 (1975).

Both of the North Carolina cases relied upon involved direct attacks, by appeal from timely motions in the trial court, that challenged the rendition of default judgments without the three-day notice, and both did give relief from the judgments. But it is clear that the North Carolina court considered the failure to give notice to be merely an irregularity exposing the judgment to direct attack, *see Taylor,* 127 N.C. App. at 717, 220 S.E.2d 806 and not to collateral attack as a void judgment.

Although the precise issue has apparently not been presented to the North Carolina courts, as it could only be by an attempted collateral attack, we are satisfied from the expressions in the *Miller* and *Taylor* cases, and from the approach taken by North Carolina courts to the significance of notice requirements of this general kind, that North Carolina would not consider that a failure of Rule 55(b)(2) notice made a resulting default judgment void and therefore subject to collateral attack.

Once personal jurisdiction has been acquired over a defendant, by service of process or voluntary appearance, North Carolina law considers him fixed with notice of all orders and proceedings taken in open court. *See, e.g., Collins v. North Carolina Highway Commission,* 237 N.C. 277, 74 S.E.2d 709 (1953); *Craver v. Spaugh,* 226 N.C. 450, 38 S.E.2d 525 (1946). *Collins* remains the definitive North Carolina decision respecting notice requirements in litigation. It distinguishes between "constitutional notice," that original notice

---

**15.** In any event the clerk's failure to make formal entry of default under Rule 55(a), N.C.R. Civ.P., has been held not to invalidate even upon direct attack a subsequent default judgment rendered by a superior court judge.

*Highfill v. Williamson,* 19 N.C.App. 523, 532, 199 S.E.2d 469, 474 (1973).

**16.** *See* note 11 *supra.*

required by due process for the obtaining of personal jurisdiction, and "procedural notice," that notice required by rules or statutes as a condition to the entry of judgment or order affecting a party's rights. Whereas failure to provide constitutional notice of course makes a resulting judgment void, a failure of mere procedural notice makes the resulting judgment merely irregular and voidable, not void. Significantly, under this approach the North Carolina Supreme Court in *Rich v. Norfolk & Southern Ry. Co.*, 244 N.C. 175, 92 S.E.2d 768 (1956), has characterized (under pre-Rule 55 law) a clerk's entry of judgment by default and inquiry in the absence of notice to defendant of a hearing on the motion as merely "irregular," *i.e.*, voidable, not void.

▪ We conclude that, faced directly with the issue, North Carolina would consider the failure of Rule 55(b)(2) notice also to constitute a mere procedural irregularity subjecting a resulting judgment to direct but not to collateral attack.[17] Accordingly, we hold that the state court judgment was immune to collateral attack on this basis.

### III

▪ The summary judgment for defendant is vacated and the action remanded

to the district court for further proceedings. We observe, without addressing the issues thereby raised,[18] that the substantive grounds for summary judgment relating to National's obligation to plaintiff under its policy of insurance have not been addressed.

*VACATED AND REMANDED.*

---

17. In addition to the cited expressions in North Carolina cases, this is the view generally taken by federal courts in applying counterpart Rule 55(b)(2), Fed.R.Civ.P., a factor that we note has been persuasive with North Carolina courts in applying that state's counterparts to federal rules.

Though regarded as a "serious procedural irregularity," 6 *Moore's Federal Practice* ¶ 55.05[3] (2d Ed. 1979), most circuits ruling on the matter have held that a failure of notice under Rule 55(b)(2) renders a judgment irregular and voidable, but not void. *See Port-Wide Container Co. v. Interstate Maintenance Corp.*, 440 F.2d 1195 (3d Cir. 1971); *Winfield Assoc., Inc. v. Stonecipher*, 429 F.2d 1087 (10th Cir. 1970); *Gomes v. Williams*, 420 F.2d 1364 (10th Cir. 1970); *Hutton v. Fisher*, 359 F.2d 913 (3d Cir. 1966); *Rutland Transit Co. v. Chicago Tunnel Terminal Co.*, 233 F.2d 655 (7th Cir. 1956); *United States v. Borchers*, 163 F.2d 347 (2d Cir. 1947); *United States v. Watkins*, 159 F.2d 675 (2d Cir. 1947). *But see Bass v. Hoagland*, 172 F.2d 205 (5th Cir. 1949).

18. On appeal, National has urged in its brief that we address these issues and affirm the summary judgment on these alternative grounds even though they were not addressed or relied upon by the district court. Yale as appellant has also briefed the issues. While our power (and duty) to do so is clear in appropriate circumstances, *see* 10 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2716 (1973), it is a power to be exercised with circumspection and with a close eye to the state of the record. We do not believe this to be a proper case for its exercise. With emphasis now shifted from the jurisdictional grounds upon which summary judgment was erroneously granted, the substantive issues of policy coverage and possibly related ones of the preclusive effect of the state court judgment may be focused upon more directly, perhaps on a reopened record if this seems indicated to the district court. We are not satisfied that the present record is adequate for a fair first instance determination of those issues by this court. *See Restatement (Second) of Judgments*, §§ 107, 107.1 (Tent. Draft No. 3, 1976).